JOE PAULUS, Appellant, v. STATE OF SOUTH DAKOTA, and Coal Mining Commission, a Department of the State of South Dakota, Respondents.

(201 N. W. 867.)

**States — on principals of comity courts here will decline jurisdiction of suit against another state by employee of that state for injury received in its coal mine within this state.**

The State of South Dakota, by constitutional provision and legislative enactment, declared the mining of coal a public purpose and governmental function and purchased and began to operate a coal mine in the State of North Dakota. The plaintiff, a resident of South Dakota, was employed in such mine and was injured while so employed. He brought suit in the courts of North Dakota for the recovery of damages on account of such injury against the State of South Dakota.

*Held* that, upon principles of comity, the courts of North Dakota should

Note.—Jurisdiction of suit against foreign state, see annotation in 16 L.R.A. (N.S.) 276; 7 R. C. L. 1037; 2 R. C. L. Supp. 495.

refuse to assume jurisdiction of the suit and that the plaintiff be required to seek such relief as he may be entitled to in the courts of his own state.

Opinion filed November 15, 1924. Rehearing denied December 31, 1924.

States, 36 Cyc. p. 912 n. 46, 49.

Appeal from the District Court of Hettinger County, *Lembke*, J.

From an order setting aside the service of summons and dismissing the action, plaintiff appeals.

Affirmed.

*S. P. Rigler* and *Jacobson & Murray*, for appellant.

*Buell F. Jones*, Attorney General of South Dakota, and *F. M. Jackson*, for respondents.

NUESSLE, J. The plaintiff brought this action for damages against the "State of South Dakota, a foreign corporation, and Coal Mining Commission, a department of the State of South Dakota." He has appealed from an order setting aside the service of summons and dismissing the action. The order so appealed from was entered on the following record: A complaint in which plaintiff alleged that the state of South Dakota was a foreign corporation engaged in the business of owning, operating and maintaining a coal mine in the state of North Dakota; that the Coal Mining Commission was a department of the state of South Dakota by and through which the said state operated and managed said coal mine; that the defendant employed a large number of men in the operation of said mine; that such employment constituted a hazardous employment within the purview of that term as used in the Workmen's Compensation Law of the state of North Dakota and that the defendant, by virtue of said statute, was obligated to pay to the fund contemplated therein the premium for the purpose of insuring its employees, but failed to do so, and by reason of such failure became liable to plaintiff for his injury irrespective of negligence; that the defendant is a resident of the state of South Dakota; that the plaintiff is a resident of the state of South Dakota; that the defendant was not acting, in carrying on and operating said coal mining business, as a sovereign state, but was acting as a private corporation; that it was thus engaged in the state of North Dakota

without the consent of North Dakota but without any objection on its part; that the plaintiff was employed by the defendant as a coal miner in the properties thus operated by the defendant in North Dakota; that by reason of negligence on the part of the defendant the plaintiff was grievously injured, and the plaintiff demanded damages in the sum of $50,000.

The plaintiff filed his summons and complaint in the district court and caused a warrant of attachment to be issued and the real and personal property of the defendant in North Dakota to be attached. Thereafter, the plaintiff caused a copy of the summons and complaint to be served upon the members of the Coal Mining Commission, including the Governor of the state of South Dakota, and upon the Attorney General of the state of South Dakota. Such service was made within the state of South Dakota, excepting upon one of the commissioners, who was served in North Dakota. Subsequently, the state of South Dakota and the Coal Mining Commission of South Dakota, appearing specially, moved the district court to set aside and vacate the service of the summons and to dismiss the action with costs. The grounds assigned for such motion were that the defendant, the State of South Dakota, was a sovereign state over which the district court of the state of North Dakota had no jurisdiction; that the defendant, Coal Mining Commission, was a department of the sovereign state of South Dakota, over which the district court of the state of North Dakota had no jurisdiction, and that the requirements of the Laws of North Dakota, with reference to the issuance and service of the writ of attachment, had not been complied with. In support of such motion, the defendant, by its attorneys, filed affidavits setting forth "That the purpose for which the Coal Mining Commission was established was to furnish coal to the people of the state of South Dakota and the public institutions of the state of South Dakota. That the said Coal Mining Commission has no property whatever as such, but that said Coal Mining Commission is now, and has been for some time since its creation, managing and mining coal near Haynes, Adams County, North Dakota, and which said coal mine with all of its equipment, is the property of the sovereign state of South Dakota and that it was created by an act of the legislature of the state of South Dakota for the purpose of carrying out the provisions of a constitutional amend-

ment to the constitution of the state of South Dakota; . . . that the property and all of the property attempted to be levied upon is now, and was at all times during the past three years, the property of the sovereign state of South Dakota, used for the purpose of carrying out the provisions of an act of the legislature of the state of South Dakota for the year 1919; that no property attempted to be attached was other than the property of the state of South Dakota."

No further showing was made on the part of the plaintiff, and on the record, as thus established, ·the matter came on for hearing before the district court of Hettinger County. The court, after consideration, entered the order setting aside the service of the summons and dismissing the action from which this appeal is taken.

Article 13, ¶ 14, an amendment to the constitution of the state of South Dakota, adopted in November, 1918, provides:

"The mining, distribution and sale of coal are hereby declared to be works of public necessity and importance in which the state may engage, and the Legislature may enact suitable laws to carry this provision into effect, and empower the state to acquire by purchase or appropriation all lands, structures, easements, tracts, right of way, equipment, cars, motive power, and all other facilities, implements, instrumentalities and materials necessary or incidental to the acquisition, mining manufacturing and distribution of coal for fuel purposes. Provided, however, that no expenditure of money for purposes enumerated in this section shall be made except upon a vote of two-thirds of the members elect of each branch of the Legislature."

The legislature of South Dakota in 1919 passed an act providing for a coal mining commission which was thereafter approved by the Governor. This act is known as chapter 136 of the Session Laws of 1919. Section 1 thereof reads:

"The people having adopted at the last general election Amendments to Article 13 of the Constitution, to the effect that the mining, distribution and sale of coal are works of public necessity and importance in which the state may engage, and authorizing and empowering the state to engage in the mining, distribution and sale of coal, the mining, distribution and sale of coal are hereby declared to be public purposes impressed with a public use, and as such governmental functions of the state and subject to regulation."

Section 2 creates a state commission, to be known as the Coal Mining Commission, to consist of the Governor and two members to be appointed by him and provides for their compensation. Section 3 authorizes the commission thus created to engage in the mining, distribution and sale of coal and, for that purpose, to acquire real property in the state of South Dakota or adjacent states, either by purchase or appropriation by the exercise of the right of eminent domain, as provided by the laws of South Dakota. Section 4 makes it the duty of said commission to make investigations and locate coal fields suitable in the opinion of the commission for the location and development of coal mines by the state, and to employ the necessary assistance to do this; to provide and supply such equipment as may be necessary for the opening, development and operation of coal mines, and empowers the commission to do any and all things in the premises requisite and necessary in the performance of their duties under the act. Section 5 provides that, if the commission shall establish and operate coal mines, it is its duty and it is empowered to employ such assistance as is necessary to accomplish that purpose; to provide rules and regulations for the conduct and management of mines; to fix wages and establish prices at which coal should be sold; to distribute and sell coal to the citizens of South Dakota at such prices and on such terms as in its opinion shall be for the best interests and protection of the state and the people thereof; that such coal shall be sold at the lowest possible price consistent with the successful operation of the mines and that only such profit may be made as shall be necessary to defray the expenses of operation and to repay to the state of South Dakota the monies appropriated by the act and to set aside a reserve for the replacement of equipment. Section 6 appropriates the sum of $150,000 out of the state treasury to be placed to the credit of the commission for the purpose of carrying out the provisions of the act. It provides that the monies received from the sale of coal shall be placed in a revolving fund, and for the transfer by the commission for the said revolving fund to the state treasury of any funds therein not actually needed for the transaction of the business. The act further provides that the books and vouchers of the commission shall at all times be open to examination and audit by the Public Examiner of the state of

South Dakota. The final section of the act is an emergency clause reading:

"Section 9. Whereas, the passage of this law is necessary for the immediate preservation of the public peace, health and safety and the support of the state government and its existing public institutions. Therefore, an emergency is hereby declared to exist and this act shall be in full force and effect from and after its passage and approval."

Nowhere in the act is it provided that the Commission may sue or be sued.

Article 3, ¶ 27 of the constitution of the state of South Dakota provides:

"The legislature shall direct by law in what manner and in what courts suits may be brought against the state."

The only legislative enactment, pursuant to this provision, appears to be § 2109, Rev. Codes 1919, which provides for the bringing of actions against the state in the Supreme Court.

The Workmen's Compensation Law of South Dakota, article 4 of chapter 5 of Part 19, §§ 9436–9491, inclusive, of the Revised Codes of 1919, is applicable to the employees of the state, as well as of private employers, whether employed within or without the state. Section 9451, of that article reads:

"The provisions of this article shall apply to the state and any municipal corporation within the state or any political division thereof, and to the employees thereof."

Section 9453 provides:

"Every employer and employee under this article . . . shall be bound by the provisions of the article, whether injury by accident or death resulting from such injury occurs within this state or in some other state or in a foreign country."

The plaintiff in support of this appeal advances the following propositions: That the state of South Dakota, by creating a coal mining commission and granting to such commission such authority as it has, impliedly consented that the state and the commission might be sued just as a private individual, with respect to its coal mining operations; that the state of South Dakota, by coming into the state of North Dakota, through its agent, the Coal Mining Commission, and owning and operating properties in North Dakota, divested itself of its sov-

ereignty and holds such property and conducts such industry as a private individual; that the immunity of a state from suit may be waived and that the defendant, by invoking the action of the district court on grounds other than those based upon its sovereign character, waived such immunity; that the defendant comes into court and defends as a foreign corporation and not as a sovereignty; that to hold that under the circumstances the court has no jurisdiction potentially results in a denial of the sovereignty of the state of North Dakota and the subordination and ultimate absorption of this state by the state of South Dakota; that the defendant is subject to suit by virtue of the Workmen's Compensation Law of North Dakota. On the other hand, the defendant contends that the only courts in which the state of South Dakota may be sued are the courts of South Dakota; that the courts of the state of North Dakota are without jurisdiction to hear and determine any action that involves the state of South Dakota or any department of that state; that whether the state of South Dakota or any of its departments may be sued is a matter that rests with and must be determined by the state of South Dakota itself.

The questions thus sought to be presented in this case are peculiar and delicate. The plaintiff, a resident of the state of South Dakota, having received injuries during the course of his employment by that state or one of its departments, seeks to recover damages in the courts of North Dakota. Where the contract of employment was made is not disclosed, but the alleged injuries were received within the state of North Dakota. It appears that a way for relief is open to him under the laws of and in the courts of his own state. Yet he seeks his remedy here, and asks this court to interpret and determine the effect of the constitutional provisions and legislative enactments of a sister state, in advance of any interpretation and constructions of those provisions and enactments by the courts of that state, on matters touching its sovereignty and political policy. It seems to us that the initial question here is not as to whether the courts of North Dakota might have and might assume jurisdiction of the plaintiff's cause, but whether, as a matter of comity they should do so. We are impelled to hold, on principles of comity, that the courts of this state should, on the record as presented, refuse to take jurisdiction and that the plaintiff be required

to seek such relief as he may be entitled to in the courts of his own state.

The plaintiff contends that the state of South Dakota, by raising a question on account of the regularity of the attachment proceedings, waived its sovereignty and submitted to the jurisdiction of the district court. We think that this contention is wholly untenable. The state of South Dakota principally grounded its motion for a dismissal upon the fact that it was a sovereign state, and that was the reason assigned by the district court for its order setting aside the service of the summons and dismissing the action. We think that no further discussion is necessary as to that contention.

It is so well settled that an action can not be maintained against a state without its consent that the citation of authorities in support of that proposition would be a fruitless labor. The plaintiff concedes this. He also concedes that South Dakota has given no express consent to be sued, excepting in the manner prescribed in § 2109, S. D. Rev. Codes 1919, supra. But he insists that the state of South Dakota, by engaging in the business of mining and selling coal, ordinarily a private business, is not exercising a public or governmental function and must be held to have impliedly consented that, in so far as its undertakings in that direction are concerned, it may be considered and treated as a private individual. It seems to us that the mere fact that the people of the state of South Dakota, the source of the governmental powers of that state, have seen fit, by constitutional and legislative enactment, to engage in an enterprise which heretofore has ordinarily been considered as a private enterprise, is not sufficient to warrant this court in saying that it follows that such enterprise is of a private character. Governmental and political ideals and policies must and do change. What is considered a private purpose to-day may be a public purpose and governmental function to-morrow. In the exercise of the power which every government possesses to do that which is for the general welfare of its people, governments to-day are doing that which yesterday was unheard of, and to-morrow may be doing that which is unthought of to-day. What gives rise to public necessity or what constitutes a public purpose are in the main local questions, dependent largely upon local conditions, and to be determined by the local government. That being the case, we should not

say that, in so far as the state of South Dakota is concerned, the mining of coal is not a public purpose and a proper governmental function. It follows that we should not say that, by undertaking that function, the state of South Dakota denuded itself of its sovereignty, assumed the character of a private individual and is, therefore, as such, subject to suit. If the courts of the state of South Dakota were to hold that the mining of coal by the state of South Dakota, through its coal mining commission, is not a public purpose and a proper governmental function but a private purpose, we should feel concluded by that holding; and, likewise, where the courts of South Dakota have not so held but, on the contrary, the people of that state, by constitutional provision and legislative enactment, have declared otherwise, we should hesitate to challenge the propriety of that declaration. See Jones v. Portland, 245 U. S. 217, 62 L. ed. 252, L.R.A.1918C, 765, 38 Sup. Ct. Rep. 112, Ann. Cas. 1918E, 660; Green v. Frazier, 253 U. S. 233, 64 L. ed. 878, 40 Sup. Ct. Rep. 499. In any event those considerations of comity to which we have heretofore made reference require us to refrain from passing upon the question in this suit which, it must be remembered, is brought by a resident of South Dakota. We must, then, for the purposes of this case, the state of South Dakota having asserted its sovereignty and consequent immunity from suit, consider the Coal Mining Commission a department of the state of South Dakota, an arm of the state by and through which the state functions.

The plaintiff further insists that South Dakota as a state can not enter North Dakota; that it discards its sovereignty when it crosses the boundary line; that while it may own property and carry on business in North Dakota, it can do so in the absence of legislative permission only as a private corporation and not as a sovereign state; that while in North Dakota it is subject in every way to the state of North Dakota and the laws of that state, even as every other private corporation. But North Dakota makes no complaint; North Dakota asks no relief from the court in this action. If that were the case, a wholly different proposition might be presented. Again, we must remember that the plaintiff is a resident of the state of South Dakota and again it seems to us that considerations of comity should impel the courts of this state to refrain from exercising jurisdiction. There is no ques-

tion of the sovereignty of the state of North Dakota or of the rights of any of its citizens involved in this case. The state of North Dakota is not, in this action, attempting to collect taxes upon property within its boundaries owned by the state of South Dakota. It is not, in this action, attempting to compel the observance of any of its laws as respects the use or operation of any property owned or operated by South Dakota within the state of North Dakota. There is no question as to the jurisdiction of the state of North Dakota over the property attached. The question is as to whether jurisdiction should be assumed in an action against the state of South Dakota. Though it be conceded, as the plaintiff contends, that South Dakota holds such property as it has in North Dakota as a subject and not as a sovereign, yet, that can make no difference. The instant case is not an action strictly in rem. The mere fact that the alleged injury, for which damages are sought to be recovered occurred on and in the operation of property owned by the defendant does not warrant an action against the property. The attachment resorted to is a proceeding to subject property to the jurisdiction of the court to the end that such damages as the plaintiff may establish against its owner, not against the property, may be satisfied out of the same. No distinction should be drawn between a suit thus involving the property of the state of South Dakota and a suit against the state itself. If the court has no jurisdiction to adjudicate such claim for damages, or ought to refuse to assume jurisdiction, then the attachment can make no difference and the result must be the same.

The plaintiff further urges that the defendant is subject to suit by virtue of the Workmen's Compensation Law of North Dakota. This contention is answered by what we have last above said. This action is not brought by North Dakota by reason of the non-compliance of South Dakota with the laws of North Dakota. North Dakota is not here complaining and seeking to vindicate its sovereignty. If it were, the case might be different,—but it is unnecessary to express any opinion in that respect. Those same considerations which actuate us in holding that the courts of North Dakota ought not assume jurisdiction of this cause will doubtless likewise move the state of South Dakota to so conduct any enterprise in which it may see fit to engage in North Dakota in such manner that no embarrassment either to itself

or to this state may ensue.  We think that it is proper for us to say that we have been informed that South Dakota has taken this position and is complying with the requirements of the law as respects the use and operation of its mines in this state.

We are satisfied that the action of the district court was right, and the order appealed from is accordingly affirmed.

BRONSON, Ch. J., and JOHNSON, CHRISTIANSON, and BIRDZELL, JJ., concur.