·JOE PAULUS, Appellant, v. STATE OF SOUTH DAKOTA, a
Foreign Corporation, and Coal Mining Commission of the State
of·South Dakota, a Department, Subdivision and Agency of the
State of South Dakota, Respondents.

(227 N. W. 52.)

Opinion filed August 16, 1929.   Rehearing denied October 22, 1929.

*S. P. Rigler* and *Jacobsen & Murray,* for..appellant.

*F. M. Jackson* and *M. Q. Sharpe,* Attorney General of South Dakota (of counsel), for respondents.

BIRDZELL, J. This is an action for damages for personal injuries. The action was dismissed in the district court and the plaintiff appeals. The cause was before this court upon a former occasion when, upon grounds of comity, it was dismissed. Paulus v. State, 52 N. D. 84, 201 N. W. 867. In the complaint which was then before the court, the plaintiff alleged that he was a resident of South Dakota. In the present complaint he alleges he is a citizen of Poland but that for the last twenty years or more he has been a resident and taxpayer of the state of North Dakota and has declared his intention to become a citizen of the United States. The defendant, state of South Dakota, is alleged to be a foreign corporation engaged in its proprietary capacity in the private business of owning, operating and maintaining a coal mine in Adams county in this state; that the other defendant, the Coal Mining Commission of the state of South Dakota, was and is a department and agency of the state of South Dakota, by and through which it operated and managed the coal mine. It is alleged that in the operation of the coal mine the defendants entered into contracts in North Dakota employing laborers; that they employed the plaintiff in a hazardous employment and in circumstances which assured to him the protection of the North Dakota Workmen's Compensation Law;—that the defendants did not pay premiums to the North Dakota workmen's compensation fund and have failed to comply with the act and by reason of such failure they were not entitled to the benefits and protection afforded employers by said law; that on the 6th day of October, 1922, the plaintiff was in the performance of his duties mining coal for the defendants in Adams county, North Dakota, and in the course of his employment was injured by an explosion of a keg of powder. It is to recover for these injuries that the action is brought.

It is the contention of the appellant that when the state of South

Dakota undertook to operate a coal mine in this state it embarked upon a private business and must be considered to have abandoned for all purposes connected with the business its sovereign character; that it must be considered to have subjected itself to the laws of North Dakota enacted for the protection of employees and consequently to have become liable according to the terms of the Workmen's Compensation Law the same as a private employer. Then the further contention is advanced that the state of South Dakota has consented to be sued, expressing its consent in such terms as to authorize the instant action.

The principal authorities relied upon to sustain the first contention are Sargent County v. State, 47 N. D. 561, 182 N. W. 270, and Georgia v. Chattanooga, 264 U. S. 472, 68 L. ed. 796, 44 Sup. Ct. Rep. 369. In the Sargent County Case, supra, this court was called upon to construe the constitutional and statutory enactments under which the Bank of North Dakota was chartered to determine whether the bank had a distinct status separate and apart from the state, so that it might be subjected to garnishment proceedings. In the course of the opinions in that case the constitutional and statutory provisions, which seemed clearly to point to the separate status, were quoted and relied upon as showing that the bank should be treated, for purposes of suit, as having a distinct status and as not being identical with the state. We of course took judicial notice of all the constitutional and statutory provisions defining the charter powers of the bank. In the instant case the law under which the defendant, the Coal Mining Commission of the state of South Dakota, is organized is the law of a sister state and one of which we cannot take judicial notice. It is not pleaded. (36 Cyc. 1240.) Neither is the legal status of the defendant, the state of South Dakota, pleaded further than to say that it is a foreign corporation engaged and engaging, in a proprietary capacity, in the private business of owning, operating and maintaining a coal mine in this state. We take judicial notice of the fact that the state of South Dakota is a sovereign state of the United States. This fact is deemed part of the pleadings and not a mere matter of evidence. (Comp. Laws 1913, ¶ 18, § 7937.) Therefore, the allegation that the state of South Dakota is a foreign corporation is necessarily qualified by the fact of which the court takes judicial notice. In the absence of allegations showing by what statutory authority the state proceeds

in the acquisition, maintenance and operation of the coal mine, we cannot assume that it has altogether abandoned its governmental sovereignty for the limited purpose. Whether it has done so obviously depends more upon the law under which it operates than upon the character of the activity. Modern society furnishes numerous examples of the state or other governmental agencies directly engaging in activities which but for the governmental end sought to be accomplished would be regarded as private businesses.

Obviously, any discussion in the Sargent County Case of the character of the business in which the state was engaged was pertinent to a consideration of the true meaning of the constitutional and statutory provisions defining the charter powers. But it is not authority for the assumption of the appellant here that the operation directly by the sovereign authority of what is generally regarded as a private enterprise is necessarily accompanied in every instance by a complete surrender for the purpose of the attributes of sovereignty, among which is immunity from suit. The Sargent County Case does not so hold. Therefore, in the absence of allegations as to the law of the sister state showing a consent to be sued, the courts of this state must necessarily regard a sovereign sister state as immune to the same extent that this state would be immune in the absence of a consenting statute.

Furthermore, when this case was before this court upon the former appeal (52 N. D. 84, 201 N. W. 867) the constitutional and statutory provisions of South Dakota authorizing the state to engage in the business in question were quoted, and the argument of counsel to the effect that the state had laid aside its sovereignty was answered as follows (page 91 of the state report and page 869 of the Northwestern Reporter):

"It seems to us that the mere fact that the people of the state of South Dakota, the source of the governmental powers of that state, have seen fit, by constitutional and legislative enactment, to engage in an enterprise which heretofore has ordinarily been considered as a private enterprise, is not sufficient to warrant this court in saying that it follows that such enterprise is of a private character. Governmental and political ideals and policies must and do change. What is considered a private purpose to-day may be a public purpose and governmental function to-morrow. In the exercise of the power which every

government possesses to do that which is for the general welfare of its people, governments to-day are doing that which yesterday was unheard of, and to-morrow may be doing that which is unthought of to-day. What gives rise to public necessity or what constitutes a public purpose are in the main local questions, dependent largely upon local conditions, and to be determined by the local government. That being the case, we should not say that, in so far as the state of South Dakota is concerned, the mining of coal is not a public purpose and a proper governmental function. It follows that we should not say that, by undertaking that function, the state of South Dakota denuded itself of its sovereignty, assumed the character of a private individual and is, therefore, as such, subject to suit. . . . In any event those considerations of comity to which we have heretofore made reference require us to refrain from passing upon the question in this suit which, it must be remembered, is brought by a resident of South Dakota."

The fact that the plaintiff in the present complaint alleges that he is an alien and a resident of North Dakota, instead of a citizen of South Dakota as in the former complaint, in nowise alters the view expressed above concerning an implied waiver of immunity from suit as an attribute of sovereignty. No statute has been brought to our attention, either in the former suit or the present, which purports to authorize suits to be brought against the state of South Dakota on account of the manner in which it conducts the enterprise of mining coal.

It must be remembered, in considering the principal question of whether a sister state may be sued here, that the basic proposition is that an action cannot be maintained against a state without its consent.

"Sovereignty, as applied to states," says Cooley in his work on Constitutional Limitations, 7th ed. p. 1, "imports the supreme, absolute, uncontrollable power by which any state is governed. A state is called a sovereign state when this supreme power resides within itself, whether resting in a single individual, or in a number of individuals, or in the whole body of the people. In the view of international law, all sovereign states are and must be equal in rights, because from the very definition of sovereign state, it is impossible that there should be, in respect to it, any political superior."

Should the judicial branch of the government of one state undertake to define the legal obligations of a nonconsenting sister state, it would, in effect, be denying the sovereignty of the latter. A state cannot remain the supreme master of its own affairs if it must yield to external conceptions in matters of justice and right. It was this thought that led such able constitutional lawyers as Hamilton, Madison and Marshall to believe that article 3, § 2, of the Federal Constitution would not be so construed as to confer upon the Federal courts jurisdiction to determine controversies in which an individual sought to hold to account the government of another state. See The Federalist, LXXXI.; 3 Elliott's Debates, 533–556. On this subject Marshall said:

"It is not rational to suppose that the sovereign power should be dragged before a court. The intent is, to enable states to recover claims of individuals residing in other states. I contend this construction is warranted by the words. . . . If an individual has a just claim against any particular state, is it to be presumed that, on application to its legislature, he will not obtain satisfaction?"

When afterward, in Chisholm v. Georgia, 2 Dall. 419, 1 L. ed. 440, the Supreme Court of the United States adopted a broader view of the jurisdiction of the Federal courts than these statesmen thought warranted by the terms of the Constitution, the eleventh amendment was promptly adopted.

Thus, so carefully have the sovereign prerogatives of a state been safeguarded in the Federal Constitution that no state could be brought into the courts of the United States at the suit of a citizen of another state. Much less would it be consistent with any sound conception of sovereignty that a state might be haled into the courts of a sister sovereign state at the will or behest of citizens or residents of the latter. He who would thus seek recourse should therefore be required to clearly show by his pleadings the unqualified consent of the defendant.

But the plaintiff argues that the case of Georgia v. Chattanooga, 264 U. S. 472, 68 L. ed. 796, 44 Sup. Ct. Rep. 369, is authority for the proposition that a state, by engaging in a private business within another state, subjects itself to the laws of the latter to the extent that it can no longer claim immunity from suit to enforce the obligations arising therefrom. This was a case where the state of Georgia obtained

leave to file a bill in the Supreme Court of the United States to enjoin the city of Chattanooga from appropriating for street purposes lands constituting a part of a railroad yard which the state of Georgia owned in the latter city. The city was asserting its power of eminent domain, and the court held that the ownership of property by the state of Georgia within the confines of another state was necessarily subject to the power of eminent domain in the latter. The court expressly declined to decide the broad question as to whether or not the state of Georgia had consented generally to be sued in the courts of Tennessee in respect to all matters arising out of its ownership of property in that state and held that the power of the city to condemn did not depend on the consent or suability of the owner. The distinction between the case of Georgia v. Chattanooga, supra, and the present case is obvious. Here there is no attempt to subject property of the state of South Dakota within this state to any burden to which property in general is subject, regardless of the character of its ownership. The present suit involves an attempt to obtain a judgment against a foreign state, which when obtained would presumably be collectible out of any property of the latter within this state and which would be a judgment entitled to the support of the full faith and credit clause of the Federal Constitution.

Neither is the case of State v. Holcomb, 85 Kan. 178, 116 Pac. 251, 50 L.R.A.(N.S.) 243, an authority supporting the contention of the plaintiff. In so far as it justifies the assertion of sovereign powers, such as taxation, by the government of the state within which property is located that is owned by a foreign municipality, the analogy is consistent rather with Georgia v. Chattanooga, supra, than with the facts in the instant case.

But, without pleading any statute of South Dakota, counsel in their brief quote chapter 303, Session Laws of South Dakota of 1925, as follows: "That all actions against the state of South Dakota where the state of South Dakota or some of its employees or servants are guilty of the negligence that causes the injury, as provided in the Workmen's Compensation Law of the state of South Dakota, shall be brought in the Circuit Court in the county wherein the injury occurred;" and a further provision (§ 9453, Laws of South Dakota for 1919) that every employer is bound by the provisions of the Workmen's Compensation

Law whether the accident or death resulting from the injury occurs within the state of South Dakota or in some other state or in a foreign country. From these provisions they argue that the state has expressly consented to be sued and has not limited such actions to the courts of the state of South Dakota. It is elementary that the legislature, in authorizing suits to be brought against a state, may designate the court or courts in which the remedy may be sought and that those availing themselves of the statutory permission must comply.

Clearly, the consent of a state to be sued in the circuit court in the county wherein the injury occurred is limited to the courts of the consenting state, and the mere fact that employers generally are rendered liable under the provisions of the compensation law, even for injuries occurring outside the state, is not a circumstance affecting the jurisdiction to determine questions of liability.

It follows from what has been said that the cause was properly dismissed and the judgment of dismissal is affirmed. It is obviously unnecessary to consider the sufficiency of the service.

BURKE, Ch. J., and CHRISTIANSON, NUESSLE, and BURR, JJ., concur.