29200.   FLORIDA STATE HOSPITAL FOR THE INSANE
*et al. v.* DURHAM IRON COMPANY INC.

DECIDED OCTOBER 25, 1941.   REHEARING DENIED DECEMBER 11, 1941.

*J. Tom Watson,* attorney-general of Florida, *Nathan Cochrell, Thomas V. Kiernan, Woodrow M. Melvin, John R. Wilson,* for plaintiffs in error.

*Charles H. Kirbo, Vance Custer,* contra.

GARDNER, J. 1. The eleventh amendment to the United States constitution (Code, § 1-811), with reference to State immunity from suit, is immunity from suit in the Federal courts, not the State courts. *Florida State Hospital for the Insane* v. *Durham Iron Co.,* 192 *Ga.* 459 (15 S. E. 2d, 509), and cit.

2. Much is said and many authorities are cited in the arguments for both sides to the effect that a citizen may not maintain a suit against his sovereign State without permission from the sovereignty so to do. This is the general rule and is well settled. As to the case before us, it would be of little historical or other value to enlarge on this question. The decisions, with the exception of a very few, which we will hereinafter examine, cited by both the plaintiff and the defendants from this and other States, are suits either in law or in equity by citizens of a State, seeking recovery in law or in equity of relief against the State through its officers. They reflect very little light on the issues involved in this case, except they do illuminate the question that in wrongdoing the officer does not act for the State on the theory that a State or sovereign does no wrong. In this connection it is interesting to note that in recent years, when so many governmental functions have been delegated to so many governmental agencies designed to compete in industrial activities which were formerly considered fields for activities of subjects or citizens only, the Congress, along with the granting of such privileges to the government, likewise with such privileges and obligations, granted permission to sue and be sued as a subject. To our minds this was but just. Keifer *v.* Reconstruction Finance Cor., 306 U. S. 381, 385 (59 Sup. Ct. 516, 83 L. ed. 784). Then, too, in many of our State jurisdictions, the State has not been wont to restrain its citizens from calling into assistance the power of its courts of equity to prevent an official of the State, in the name of his office and in behalf of the State, from dealing unjustly with one of its citizens or

subjects in his private rights guaranteed to him by the constitution, on the ground that the sovereign State was immune from suit. This is based on the theory that the constitutional guarantee to the citizen would prevail over the wrongdoing of the State officials, even though the rights of the citizen had been invaded by the officer in the name of and for the benefit of the sovereign State, notwithstanding the immunity from suit of the sovereign State. A recent and very enlightening decision on this point was rendered by the Supreme Court of Florida in State Road Department of Florida v. Tharpe (Fla.), 1 So. 2d, 868. A distinction is sought to be drawn between the case just cited and the case at bar, on the ground that that case was one at equity and the case before us is one at law. While this is true, the cited case is illustrative of the trend, and we feel, in justice to the cause, that it is a ruling principle of our government that the sacred constitutional rights of citizens to be secure in their property rights are to be respected by officials of a State equally so much as by a fellow citizen or subject. The underlying principle from the day of the Magna Charta, now embodied in the Bill of Rights in all of our constitutions is that the sovereign (State) must do no wrong. A subject of a State may not sue his sovereign without its consent, express or implied, yet only in rare instances has the State refused through its courts to give its injured subjects relief in its courts of equity. This is the foundation of a democratic or representative form of government. But what has been said in this division of our opinion is dealing with the relation of the Federal government regarding its delegated function in relation to its subjects and a State with reference to its immunity from suit of its own citizens or subjects. Such is not the case before us.

3. Thus we come to face the controlling issue in the case at bar. Succinctly the facts are as follows: the Governor of Florida and his cabinet, as such, purchased land within the boundaries of Georgia, without the consent of the State of Georgia and without legislative authority from the State of Florida, for the purpose of carrying on operations thereon in connection with and aid of a sanitarium for the care of the insane of Florida. It will be observed from the evidence introduced by the defendants that the constitution of Florida does not provide for the purchase of land in the State of Georgia, and the legislature of Florida has never at-

tempted to authorize the defendants to purchase it, and so far as the evidence shows there was no warrant or authority for the defendants to do so. Neither does the evidence show that the State of Florida ever sought or received permission from the State of Georgia to acquire land within the domain of the sovereign State of Georgia, and to establish within the confines of Georgia the sovereignty of Florida, by the Governor and his cabinet or otherwise. We have been unable to find any authority to the effect that one State can extend its sovereignty into another State, by acquiring property without permission or authority, and claim immunity of sovereignty, through its State officials, from any liability to which the citizens or subjects of the State in which the property is purchased are subject. But there are cases to the contrary import, where municipalities of one State have gone into another State, acquired property, and operated a business for profit. *City Council of Augusta* v. *Hudson,* 88 *Ga.* 599, 605 (15 S. E. 678); State ex rel. Taggart *v.* Holcomb, 85 Kan. 178 (116 Pac. 251, 50 L. R. A. (N. S.) 243, Ann. Cas. 1912D, 800). It is contended by the plaintiffs in error that these cases are not applicable, for the reason that there is a vast difference between a State and a subdivision thereof, one being a sovereign and the other not. This is granted. But the principles pronounced afford an appealing approach to the question before us. The question before us is, when a State enters the territorial limits of another State under such facts as are here presented, does it enter as a sovereign or a subject? The following decisions of the Supreme Court were not dealing with this question: Osborn *v.* Bank of the United States, 22 U. S. 738 (6 L. ed. 204); United States *v.* Lee, 106 U. S. 196 (1 Sup. Ct. 240, 27 L. ed. 171); Poindexter *v.* Greenhow, 114 U. S. 270 (5 Sup. Ct. 903, 962, 29 L. ed. 185). The questions there presented were, do the facts of each case show that the State was the real party? If so, the suit could not be maintained in the Federal court in violation of the eleventh amendment to the United States constitution. If not a suit against the State, it could be maintained in the Federal court. The dissenting opinions quoted at length by learned counsel for plaintiffs in error simply hold that under the facts of these cases the State was the real party and not the officers as individuals, and the majority opinions hold contrariwise under the facts. Whether they were suits at law or in equity, sheds little, if

any, light on the question before us. Our Supreme Court has held that the eleventh amendment applies only to the Federal courts. *Florida State Hospital for the Insane* v. *Durham Iron Co.,* supra. We are aware of no provision in either the Federal or the State constitution to the effect that one State can not be sued in the courts of another State when the State being sued has voluntarily left its own domain and engaged in the operation of an enterprise along with other subjects within the jurisdiction of the court into which such State has come as a subject and not as a sovereign; and it makes no difference that the activity engaged in is the use of lands in aid of an eleemosynary undertaking seated within the State's own confines, or relates to some other business for gain to support the State by proprietorship operations in another State.

We come next to consider those cases which we think bear more directly on the contention that, in the transaction now under consideration, the State of Florida entered Georgia as a subject and not as a sovereign. It is unthinkable that there can exist two State sovereigns within the territorial confines of one State. Suppose the State of Florida should acquire all of the business activities of Decatur County, Georgia, and begin operations for the benefit of the insane asylum at Chattahoochee, Florida, and in the operation of such varied enterprises involve the rights of the subjects of Georgia, or violate contracts made with the citizens of Decatur County,—could it be successfully contended that Florida would be immune from suits in the courts of Georgia? We think not. But counsel for the plaintiffs in error contend that this is a matter for the State of Georgia to handle and not its citizens or subjects. We think not. The State of Georgia does not frown on a sister State for carrying on activities for profit as a subject. There are many instances of such activities; but what here is of concern is, in effect, that the sister State is seeking immunity from suit because of her sovereignty. She can not bring her sovereignty with her. Therefore it is immaterial whether the suit is against the State of Florida or not. See State ex rel. Taggart *v.* Holcomb, supra; Georgia *v.* Chattanooga, 264 U. S. 472 (44 Sup. Ct. 369, 68 L. ed. 796). "When a state . . comes within the boundaries of another State it does not carry with it any of the attributes of sovereignty, and is subject to the laws of such other State the same as any State. proprietor." State ex rel. Taggart *v.* Holcomb, supra. "Land

acquired by one State in another State is held subject to the laws of the latter, and to all the incidents of private ownership." As to such property "it can not claim sovereign privilege or immunity." Georgia v. Chattanooga, supra.

4. It appearing that the defendants as non-residents are subject to process of attachment as provided by the Code, .§ 8-101(1), then, with reference to debt or demand, whether arising ex contractu or ex delicto, there inheres in the cause no failure of the right, jurisdictional or otherwise, to maintain the action. The Code, § 8-102, provides: "In all cases of money demands, whether arising ex contractu or ex delicto, the plaintiff shall have the right to sue out the attachment when the defendant shall have placed himself in such situation as will authorize a plaintiff to sue out attachment." "Since the act of 1799 (Cobb, 69, 70) the remedy by attachment, with an immediate seizure of the property on the filing of the case, has existed where a debtor is a non-resident with property in this State. Code, §§ 8-101 to 8-114, inclusive. That remedy now exists 'in all cases of money demands, whether arising ex contractu or  . .  ex delicto.' Code, § 8-102; Acts 1857, p. 23. 'Where, in obedience to a writ of attachment, the officer executing the same seizes certain property as the property of such a non-resident debtor, and so makes his return to the court, it acquires such jurisdiction as will enable it to proceed to judgment subjecting his interest in the property to the payment of the debt.' " Grimmett v. Barnwell, 184 Ga. 461, 470 (192 S. E. 191, 116 A. L. R. 257); Earle v. Sayre, 99 Ga. 617 (25 S. E. 943); Harmon v. Wiggins, 48 Ga. App. 469, 473 (172 S. E. 847). The defendants having come into the State of Georgia as a "citizen" or "subject," and not as a sovereign, the cause of action was maintainable as laid, in rem.

It having been made to appear that Fred P. Cone as Governor and W. V. Knott as Treasurer of the State of Florida, have been succeeded in their offices by Spessard L. Holland and J. Edwin Larson, respectively, who are incumbents currently with the rendition of this opinion, it must be considered that the judgment rendered is binding on said successors in office, to the same extent and force as the same would have been on their predecessors in office, had they continued as parties to the within cause.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

360

GARDNER, J. It is insisted that this court, in rendering its opinion, overlooked the cases of Stockwell v. Bates, 10 Abbot's Pr. (N. Y.) 381, and Paulus v. South Dakota, 52 N. D. 84 (201 N. W. 867). Both were cited by counsel in their original brief, and were by this court taken into consideration in writing the opinion. But to our minds the facts were so different from the facts of the instant case that we did not deem it necessary to comment upon them. In the Stockwell case the State of Illinois had funds on deposit in the State of New York. The State treasurer of Illinois, being found in New York, was served with process of garnishment by an alleged debtor of Illinois. In the opinion Judge Cardozo stated: "When an individual is liable to be sued, and a State has any interest in the litigation it may be made a party, to give it an opportunity to appear, if it chooses; but I find no case which will justify, in a suit against a state, upon a cause of action solely against it, the joinder of a merely nominal party, against whom no cause of action exists, and no judgment can be had, so as to attach money of the State, and thereby coerce its appearance." We fail to see the application of the facts of that case to the case at bar. To our way of thinking the eminent jurist ruled to the contrary of the contention of the plaintiffs in error. He specifically said in that opinion that a State which has any interest in the litigation "may be made a party," and "may appear if it chooses," where it is joined with an individual upon whom service is perfected. If a State may be made a party, in such a case a judgment may be entered against a State after it has been made a party, whether it appears or not. But of course a State can not be made a party in a case by serving an individual which has no interest in the subject-matter. In the case under consideration the eminent jurist simply held that a State could not be brought into court and made a party by process of garnishment served on one of its subjects not interested in the subject-matter. In the instant case the State of Florida is made a party by seizure of the res under an attachment. If the ground of attachment is legal, the plaintiffs in error in this case are legally made parties as to the res, and they may or may not appear, as Judge Cardozo held in the Illinois case. We concede that there is no way of forcing an appearance, and that service of some kind by attachment of the res as in the instant case, or

otherwise as provided by law, must be perfected before a party is made; and after such seizure or service, not only in this nature of case, as at bar, but in all cases, the court is not concerned whether the party thus brought into court appears or not.

As to the Paulus case, supra, the facts were vastly different from the facts of the instant case. We will not attempt to detail them. In the opinion the court said that "this suit . . it must be remembered, is brought by a citizen of South Dakota." In this case it was held that on the principles of comity the courts of North Dakota would not entertain a suit brought in the courts of North Dakota by a citizen of South Dakota against his own State. This case is very interesting. The court stated that the situation was delicate under its facts, and emphasized the feature above pointed out. It went further and intimated that its decision might have been different but for the fact that the State of South Dakota had made ample provision for the protection of its citizens working in the coal mines of North Dakota. In substance the court reasoned that the laws of South Dakota had made ample provision to protect its citizens who were working in its mines in North Dakota. In the instant case, eminent counsel for the State of Florida did not point out any provision whereby the Durham Iron Company .Inc., a corporation of this State, could obtain redress through any court in the State of Florida or elsewhere; but they argue, by innuendo, that it should seek relief in the legislature of Florida. They not only contend that the Durham Iron Company Inc. has no right to sue for its debt, which the State of Florida owes, in the courts of the State of its own "birth," but that it has no right in any court, not even in the State of Florida, since Florida has provided no judicial forum where such rights may be adjudicated. We can readily understand, under the comity rule, why no State should entertain the petition of a foreign citizen against his own State. To entertain such causes a citizen of Georgia, feeling himself aggrieved, could cross the line into Tennessee or some other State and attach property belonging to Georgia, and thereby subject his own State to a suit prohibited by the laws of Georgia; but such are not the facts under consideration in the case at bar.

But it is further contended that the debt involved shows no causal connection with the property attached, and that all the facts show that the property involved and the debt alleged to be due

have to do with the same institution. We do not think it makes any difference that a piece of property was attached other than the property which is the subject-matter of the debt. This is true even assuming that the boilers are the subject-matter of the alleged debt. Nor do we think it makes any difference even if it be conceded that a contract involving the boilers and the debt was one to be performed according to the laws of the State of Florida. This would not affect the jurisdiction, but would only determine the laws to be applied in determining the substantial rights as between the parties. We are dealing here with the principle of lex fori, and not lex loci contractus. The latter is defensive as to substantive rights arising under the contract.

In conclusion, it must be remembered throughout that the sovereignty of the State of Florida is not attacked by the defendant in error. But the State of Florida itself is seeking to raise the issue within this State against a subject of this State. It is no answer for Florida to contend affirmatively that the State of Georgia alone, and not one of its subjects, is the only party that can combat this asserted defense. The State of Georgia is not concerned, and neither is the defendant in error, with the sovereignty of Florida, in the courts of the State of Georgia. Therefore, on the question whether a citizen of Georgia, in this case the Durham Iron Company Inc., has any interest or right to question either the fact or existence of the sovereignty of Florida in Georgia, in owning land in Georgia for governmental functions of Florida, and whether such issues are for question only by the sovereign State of Georgia, acting through its proper officers, we think that in a case of the character before us, when Florida sets up her sovereignty as a fact, and therefore as immunity in this cause defensively to defeat it, the citizen answering such defense has a right to challenge such assertion of sovereignty on her part to that extent, and without calling on Georgia to assist him.

*Rehearing denied. Broyles, C. J., and MacIntyre, J., concur.*