390 So.2d 433 (1980)
Tom UNDERWOOD, Appellant,
v.
The UNIVERSITY OF KENTUCKY et al., Appellees.
No. 79-1883.
District Court of Appeal of Florida, Third District.
November 18, 1980.
Alfred Gustinger, Jr., Coral Gables, for appellant.
Brown, Malmon, Salmon & Collins and Michael H. Salmon, Miami, for appellees.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
HENDRY, Judge.
Appellant Underwood seeks reversal of a final order dismissing his second amended complaint for lack of in personam jurisdiction.[1] We hold that the trial court correctly dismissed the cause, however, the dismissal should have been without prejudice to appellant's right to bring suit in a proper forum.
*434 The appellant was the plaintiff in an action instituted in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida. The complaint alleged that Underwood had been libeled in a book published by the University of Kentucky (University) and written by appellee Lyon, a professor at the University. Plaintiff and all defendants are citizens and residents of Kentucky.
The defendants moved to quash service for failure to comply with statutory requirements, and to dismiss the cause on the basis of sovereign immunity. In support of the motion, defendants filed affidavits from Lyon and the vice president of the University denying that the defendants had any contacts with the State of Florida. The affidavits also stated that the book was printed and published only in Kentucky and distribution of the book in the State of Florida, if at all, was by independent contractors. The court granted the motion to quash service and dismissed.
The complaint was twice amended and plaintiff then obtained substituted service of process on the Florida Secretary of State pursuant to Section 48.181, Florida Statutes (1979). Defendants moved to dismiss the second amended complaint on numerous grounds including lack of jurisdiction over the persons of the defendants. The trial judge granted the motion without giving any reason. Nevertheless, we are of the opinion that the case was properly dismissed: Suit does not belong in Florida.
The record does not clearly reflect which provision of the Florida long-arm statute the plaintiff sought to employ in bringing the defendants within the jurisdiction of the court. The summonses directed to the defendants recite Section 48.181 as authority for their issuance; the affidavit filed by plaintiff to show compliance with statutory requirements relating to substituted service on non-residents refers to Sections 48.181 and 48.193. However, as discussed below, service was defective under either of these statutes, and the court correctly ruled that the prerequisites of long-arm jurisdiction over a non-resident have not been met.
Section 48.193 authorizes service upon non-residents who engage either in business activities within the state or in other specific conduct, such as the commission of a tort within the state. For service to be effective under Section 48.193, the defendant must be personally served out-of-state pursuant to Section 48.194. Since the defendants were not personally served, jurisdiction could not have been acquired via Section 48.193.
Nor was service effective under Section 48.181, which was the provision actually relied upon by plaintiff. This section may be employed to obtain jurisdiction over non-residents who engage in or carry on a business or business venture in the state. The only evidence in the record as to business activities within Florida by the defendants are the bare allegations in the complaint: That the University distributed a brochure offering to sell the book to 500 alumni,[2] that the book was made available for sale by catalog mail order through bookstores within the state, and that a copy of the book may be found in the Dade County Public Library.
The jurisdictional test under Section 48.181 was recently articulated by this court in Caribe & Panama Investments v. Christensen, 375 So.2d 601 (Fla. 3d DCA 1979):
We have recently reaffirmed the established law that a plaintiff must allege sufficient facts that the non-resident defendant was doing business in Florida and that the cause of action sued upon arose out of such business before jurisdiction attaches under Section 48.181(1) ... It is clear that the burden is upon the plaintiff to sustain the validity of such service when he seeks to invoke the jurisdiction of the court, ... and he must plead sufficient facts to justify the application of the statute in order to withstand a legal challenge to such service.
at 630 (citations omitted). Moreover,
[t]he obligation of the plaintiff is not simply to raise a possibility of jurisdiction, *435 but rather to establish jurisdiction with affidavits, testimony or documents.
Hyco Manufacturing Co. v. Rotex International Corp., 355 So.2d 471, 474 (Fla. 3d DCA 1978).
Applying these principles to the case at bar, we find that the plaintiff has failed to demonstrate that the defendants were engaged in business in the State of Florida, especially in light of defendant's affidavits to the contrary. By choosing to rely solely on the bare allegations in his complaint, plaintiff has not satisfied his obligation to establish jurisdiction with satisfactory evidence.[3]
Appellant has directed our attention to Rebozo v. Washington Post Company, 515 F.2d 1208 (5th Cir.1975), a libel suit in which this state was found to have jurisdiction over a non-resident publisher. However, that case will not assist appellant: The defendant publisher in Rebozo was served under Sections 48.193(1)(b) and (f)-the "tortious act" provision of the Florida long-arm statute. Minimum contacts between the defendant and the forum state were found to exist since the defendant derived over $100,000 yearly in advertising and revenue from the State of Florida. That case is additionally distinguishable by reference to the status and location of the plaintiff. In Rebozo, the plaintiff was a Florida resident, attempting service upon an out-of-state defendant; it was for precisely that situation that the Florida long-arm statute was enacted. Sub judice, the only Florida participant is appellant's attorney.
We find Curtis Publishing Co. v. Birdsong, 360 F.2d 344 (5th Cir.1966) more persuasive. In Birdsong a libel action was filed in Alabama by a Mississippi resident against a Pennsylvania publisher. The magazine article was written in Mississippi by a New York writer. Substituted service was made on the Alabama Secretary of State. In determining that jurisdiction did not exist in Alabama, the Fifth Circuit stated:
The Supreme Court has made it perfectly clear that in this type of situation the State which seeks to subject a nonresident to its judicial jurisdiction must have a definite interest in the litigation.... There must be a rational nexus between the fundamental events giving rise to the cause of action and the forum State which gives that State sufficient interest in the litigation before it may constitutionally compel litigants to defend in a foreign forum.
at 346-47 (emphasis supplied). A rational nexus between the State of Florida and the writing, publication, and distribution of the libelous book are woefully lacking in the instant case. The State of Florida has no interest whatsoever in this litigation.
Even if we were to rule that jurisdiction may lie in the courts of this state, we would nonetheless be obliged under the circumstances to dismiss on the basis of forum non conveniens. Seaboard Coast Line Railroad Co. v. Swain, 362 So.2d 17 (Fla. 1978); Flota Mercante Gran Centro-Americana v. Stena Shipping AB, 294 So.2d 98 (Fla. 3d DCA), cert. denied 302 So.2d 412 (Fla. 1974). Jurisdiction properly belongs in Kentucky where the parties, potential witnesses, and evidence are located, where the book was written and published, and where the harm occurred.
Accordingly, the order dismissing the cause is affirmed without prejudice to bring suit in a proper forum.
DANIEL S. PEARSON, Judge, specially concurring.
I concur in the result reached by the majority. However, I believe that as to the University of Kentucky, the majority's holding is much too narrow. I would hold *436 that, as a matter of law, the University of Kentucky, which exists by virtue of the Constitution and statutes of the State of Kentucky, is owned by the State of Kentucky and is supported, maintained and operated by public funds of the State of Kentucky, cannot be sued without its consent[4] in the court of a sister state, here Florida, by one of its own citizens, such as Underwood.[5]
The principle upon which I would base this holding is an infrequently discussed aspect of sovereign immunity, recently revisited by the United States Supreme Court in State of Nevada v. Hall, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).[6] Hall was a citizen of California injured in an automobile accident when his car collided with a vehicle owned by the State of Nevada and driven by an employee of the University of Nevada while engaged in official university business. The University of Nevada (even as the University of Kentucky here) was an instrumentality of the sovereign State of Nevada.
Hall sued the University of Nevada in California. Rejecting Nevada's contention that it could not be subjected to suit in the court of a sister state, the California Supreme Court affirmed the jurisdiction of the lower California court on the theory that California could permit its citizens to bring actions in California against other states where such actions could be brought against California under its waiver of sovereign immunity. Hall v. University of Nevada, 8 Cal.3d 522, 105 Cal. Rptr. 355, 503 P.2d 1363 (1972), cert. denied, 414 U.S. 820, 94 S.Ct. 114, 38 L.Ed.2d 52 (1973). Hall thereafter prevailed at trial, and the California Court of Appeal affirmed. The United States Supreme Court, on certiorari to the Court of Appeal decision, upheld California's right to entertain the action.
The United States Supreme Court's decision in Hall is, however, expressly limited to effectuating California's interest in providing protection to those who are injured on its highways through the negligence of both residents and non-residents.[7] The decision leaves undisturbed the doctrine announced in Paulus v. State, 52 N.C. 84, 201 N.W. 867 (1924), and Paulus v. State, 58 N.D. 643, 227 N.W. 52 (1929), the only other appellate litigation in which the same issue was considered. In Paulus, the plaintiff, injured in a coal mine operated in North Dakota by the State of South Dakota, sued South Dakota in a North Dakota state court. Holding that South Dakota was immune from suit in North Dakota, the court said:
"... in the absence of allegations as to the law of the sister state showing a consent to be sued, the courts of this state must necessarily regard a sovereign sister state as immune to the same extent that this sister state would be immune in the absence of a consenting statute. 58 N.D. at 647, 227 N.W. at 54."
*437 In the view of the Paulus court, it was intolerable to allow the judiciary of one state to define the legal obligations of a non consenting sister state and, in effect, deny the sister state's sovereignty.[8]
Since, in the present case, no entrenched policy of the State of Florida would be furthered by permitting Underwood to sue his own state in our courts, I believe the case is clearly controlled by the Paulus doctrine out of which Hall carves a discrete exception.
Accordingly, I would affirm the dismissal of Underwood's suit against the University of Kentucky on this additional ground.
The author Lyon does not, of course, share in this immunity. While I agree with the majority that Underwood's suit against him was properly dismissed, I cannot agree that on the state of the record before us, Florida has been demonstrated to be a forum non conveniens so as to absolutely preclude Underwood from suing Lyon in this state. Not only must it be shown, as it is here, that the parties are not residents of Florida, but it also must be shown that the cause of action accrued in a jurisdiction other than Florida. Adams v. Seaboard Coast Line Railroad Company, 224 So.2d 797 (Fla. 1st DCA 1969), approved, Seaboard Coast Line Railroad Company v. Swain, 362 So.2d 17 (Fla. 1978). Neither that fact, nor other facts from which a court determines that its jurisdiction is a forum non conveniens, are apparent from this record. The determination that Florida is a forum non conveniens, if it is, should be made by the trial court when and if that issue comes before it.
NOTES
[1] We have jurisdiction pursuant to Fla.R. App.P. 9.030(b)(1)(A).
[2] Plaintiff does not indicate whether any of these alumni are located within Florida.
[3] Since we find that defendants were not engaged in business in the State of Florida, we need not reach the issue of whether such jurisdiction would be constitutionally permissible according to the minimum contacts requirement mandated by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and whether the defendants have purposefully availed themselves of the privilege of acting in Florida. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
[4] Underwood has not alleged in the complaint that Kentucky has waived sovereign immunity. A state's immunity from suit relates to subject matter jurisdiction. See Schmauss v. Snoll, 245 So.2d 112 (Fla. 3d DCA 1971); Kirk v. Kennedy, 231 So.2d 246 (Fla. 2d DCA 1970). Absent an allegation in the complaint that the state has waived sovereign immunity, the complaint should be dismissed. See Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968); Weppler v. School Board of Dade County, 311 So.2d 409 (Fla. 3d DCA 1975). I see no reason in not granting our sister state the same presumption of immunity that we grant our own state. See Paulus v. State, 58 N.D. 643, 227 N.W. 52 (1929).
[5] Underwood describes himself in his complaint as a citizen and resident of Kentucky and a former city council member of and a lawyer practicing in Lexington, Kentucky.
[6] "The doctrine of sovereign immunity is an amalgam of two quite different concepts, one applicable to suits in the sovereign's own courts and the other to suits in the courts of another sovereign." State of Nevada v. Hall, 440 U.S. at 414, 99 S.Ct. at 1185.
[7] "California's exercise of jurisdiction in this case poses no substantial threat to our constitutional system of cooperative federalism. Suits involving traffic accidents occurring outside of Nevada could hardly interfere with Nevada's capacity to fulfill its own sovereign responsibilities. We have no occasion, in this case, to consider whether different state policies, either of California or of Nevada, might require a different analysis or a different result." 440 U.S. at 424, n. 24, 99 S.Ct. at 1190.
[8] This view is fully explicated in the separate dissenting opinions of Justices Blackmun and Rehnquist in State of Nevada v. Hall, supra.