298 So.2d 450 (1974)
BABSON BROS. CO., an Illinois Corporation, Appellant,
v.
Virgil ALLISON, d/b/a Allison Distributing Co., et al., Appellees.
No. V-96.
District Court of Appeal of Florida, First District.
July 16, 1974.
Rehearing Denied August 28, 1974.
*451 John Andrew DeVault, III, of Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, for appellant.
David R. Lewis, of Blalock, Holbrook, Lewis, Paul & Isaac, Jacksonville, for appellees.
McCORD, Judge.
This is an interlocutory appeal from an order denying the motion of appellant, Babson Bros. Co., an Illinois corporation, (hereafter sometimes called Babson of Illinois) to dismiss the complaint of appellee, Virgil Allison, d/b/a Allison Distributing Co., (hereafter sometimes called Allison) or to quash service of process on the ground that the court lacked jurisdiction because appellant was not amenable to substituted service of process under Section 48.181, Florida Statutes, F.S.A., the long arm statute.
Allison was a Florida dealer of Surge Dairy Farm equipment under a dealership agreement with Babson Bros. Co. of Ga., a Georgia Corporation, of Oak Brook, Illinois (hereafter sometimes called Babson of Georgia). Apparently Babson of Georgia is a subsidiary of Babson of Illinois. This suit is brought by Allison against both Babson corporations alleging in Count I of *452 the complaint a conspiracy between appellee, Jimmy L. Higginbotham, (an employee of Allison for approximately four years) and one or both of the Babson corporations to deprive Allison of his dealership. Count II alleges malicious interference by Babson of Illinois with Allison's dealership contract. Count III alleges interference by Higginbotham. Count IV alleges that Babson of Georgia wrongfully refused to fill orders of Allison.
In support of its motion, Babson of Illinois presented an affidavit of its president, Theodore Tieken, stating as follows:
"Babson Brothers, Co. is not now and has never been qualified to do business nor has it in fact ever transacted business in the State of Florida; it maintains no office nor has any agents, employees, bank accounts, books of record, telephone listings, or goods stored within the State of Florida. None of its directors or officers reside or have offices in the State of Florida, nor does the corporation own any property of any kind within the State.
"Babson Brothers Co. has never entered into any dealership agreement or any other contract or agreement with the plaintiff Virgil Allison or with Allison Distributing Co., nor has it entered into any other contracts or agreements within the State of Florida.
"Babson Brothers Co. has not designated or been required to designate a registered agent in Florida to receive service of process of any law suit, action or proceeding commencing in the courts of the State of Florida, nor is any person, firm or corporation authorized to accept service by any manner, whether personal or by substitution, on behalf of Babson Brothers Co. in any action, law suit or proceeding instituted in the courts of the State of Florida."
In opposition, Allison filed two affidavits, the first of which was an affidavit of Virgil Allison which identified and filed a copy of a wood and plastic plaque personally awarded to him by affiant Tieken stating as follows:
"SURGE - Performance Award - Presented to Virgil Allison in recognition for over 5 years of outstanding Service to the Dairy Industry - Babson Bros. Co.
/s/ Theodore Tieken /s/ James Babson
 President Vice President"
The second affidavit of Allison was that of Dorothy Allison, wife of Virgil Allison, which in pertinent part states as follows:
"2. For all times pertinent in this cause I acted as secretary to Mr. Allison and as secretary of the corporation and worked regularly and daily in the business of Allison Distributing Company.
3. During the period of April 24, 1970 through March of 1971 when the dealership agreement which is part of this lawsuit between Babson Bros. Co. of Georgia and my husband and his company were in effect, a sales representative from Babson Bros. Co. visited our offices at 6222 Norwood Avenue, Jacksonville, Florida, for a period of 3 months to work with my husband and his customers  the dairys in Duval and surrounding counties  for the particular purpose of taking orders on and selling soap products produced and shipped by Babson Bros. Co. from their Oak Brook, Illinois office.
4. Additionally, I am familiar with the fact that one or more representatives of Babson Bros. Co. during said time, came to Florida and sold products directly to at least one of our customers.
5. Additionally, during said time and during said dealership a regular representative of Babson Bros. Co. visited with us in Jacksonville, Florida, on a regular basis to aid and assist us in the handling of Surge and other products *453 manufactured and shipped by Babson Bros. Co. from Oak Brook, Illinois.
6. Additionally, during this said period, eventhough [sic] the dealership was through Babson Bros. Co. of Georgia, Babson Bros. Co., the Illinois corporation required us to keep books and records relating to our dealership sales for the Illinois corporation.
7. Finally, as is clearly indicated by Exhibit "C" attached to the Complaint filed herein, it was a representative of Babson Bros. Co. and not Babson Bros. Co. of Georgia which attempted to cancel Mr. Allison's dealership on March 22, 1971, by delivery of that notice in Jacksonville, Florida, on that date."
Exhibit "C" referred to in Dorothy Allison's affidavit is a "Dealer Cancellation Notice" from "Babson Bros. Co." addressed to "Mr. Virgil Allison." It gives him a 30 day dealer cancellation notice and directs him to contact the writer (whose name is illegible) or "Mr. Ken Harrington at the Oak Brook office."
There is no counter affidavit in rebuttal of the two affidavits of Allison.
The Florida long arm statute, Section 48.181, Florida Statutes, F.S.A. provides in pertinent part as follows:
"The acceptance by ... all foreign corporations, .. . of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, constitutes an appointment by the ... foreign corporations of the secretary of state of the state as their agent on whom all process in any action or proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served. The acceptance of the privilege is signification of the agreement of the persons and foreign corporations that the process against them which is so served is of the same validity as if served personally on the persons or foreign corporations.
* * * * * *
(3) Any ... corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers or distributors to any person, firm or corporation in this state shall be conclusively presumed to be operating, conducting, engaging in or carrying on a business venture in this state."
The Florida Supreme Court in Wm. E. Strasser Construction Corp. v. Linn, 97 So.2d 458, pointed out that each case presented under the long arm statute must be resolved on the basis of the facts revealed by the record in the particular case.
The United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) set forth the basic legal principle involved as follows:
"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"
In our recent opinion in Fisher v. Premiere Realty Company, Inc., Fla.App. 298 So.2d 447, we stated the view of this court to be that it is the public policy of Florida that its long arm statute reach as far as the United States Constitution permits. In that opinion we quoted with approval from the opinion of the United States Court of Appeals, Seventh Circuit, in O'Hare International Bank v. Hampton, 437 F.2d 1173 (1971), a decision construing the Illinois long arm statute as follows:
"Personal jurisdiction over a nonresident defendant does not depend upon the *454 physical presence of the defendant within the state. It is sufficient that the act or transaction itself has a substantial connection with the forum state. Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 438, 176 N.E.2d 761, 764 (1961); Koplin v. Thomas, Haab & Botts, 73 Ill. App.2d 242, 254, 219 N.E.2d 646, 652 (1966); Ziegler v. Houghton-Mifflin Co., 80 Ill. App.2d 210, 215, 224 N.E.2d 12 (1967).
The legislative intent of the Illinois long arm statute is to exert jurisdiction over nonresidents to the extent permitted under the due process clause."
* * * * * *
"The test of whether business was transacted within the state must be applied in the context, not of communication and transportation criteria of yesteryears, but of modern day commercial and personal accelerated relationships. The long arm statutes are comrades of the computer."
While as a general proposition of law a substituted service of process statute is to be strictly construed, this long arm statute, as we stated above, is to be construed to reach as far as the United States Constitution permits. It is only limited by its terms and the due process requirement that one have certain minimum contracts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."
Here, the trial court had before it conflicting evidence. The trial court's ruling on questions of fact carries a presumption of correctness, and we cannot say that the trial judge was in error. According to Allison's affidavits, Babson of Illinois had one of its sales representatives working out of Allison's Jacksonville office for three months taking orders and selling its products and it had other sales representatives actively selling its products to Florida customers. It had a representative visiting Allison on a regular basis in handling its products. Allison was required to keep books and records for Babson of Illinois on dealership sales. A representative of Babson of Illinois delivered the cancellation of dealership notice which was in the name of Babson of Illinois. (From the complaint, it appears that such cancellation is a primary basis for Counts I and II.) In addition, Babson of Illinois presented Allison with the Surge performance award.
We find that Babson Bros. Co., an Illinois Corporation, was carrying on a business venture in Florida and had sufficient minimum contacts with this state that the maintenance of this suit upon service of process under the Florida long arm statute does not offend traditional notions of fair play and substantial justice.
Affirmed.
BOYER, Acting C.J., concurring specially.
DREW, E. HARRIS (Retired) Associate Judge, concurs.
BOYER, Acting Chief Judge (specially concurring).
I concur in every respect. I dissented in Fisher v. Premiere Realty Company, Inc., cited in the above opinion, because in that case, in my opinion, there had not been "sufficient minimum contacts" with the State seeking to employ its "long-arm statute". Such are not the facts of the case sub judice. Here appellant has, in accordance with a preponderance of the evidence, had more than "minimum contacts" in Florida. The trial court was eminently correct.