**Charles G. REBOZO, Plaintiff-Appellee,**

**v.**

**WASHINGTON POST COMPANY, Defendant-Appellant.**

**No. 74–3046.**

United States Court of Appeals, Fifth Circuit.

July 16, 1975.

---

Edward Bennett Williams, Charles H. Wilson, Jr., Jerry L. Shulman, Paul R. Connolly, Washington, D. C., Talbot D'Alemberte, Miami, Fla., for defendant-appellant.

William Frates, Miami, Fla., for plaintiff-appellee.

Before GEWIN, MORGAN and ADAMS,* Circuit Judges.

GEWIN, Circuit Judge:

The appellant Washington Post Company (Company) brings this interlocutory appeal[1] from the denial of its motion to dismiss for want of personal jurisdiction in a libel action instituted by the appellee, Charles G. Rebozo. The suit was brought against the Company in Florida following publication in the October 25, 1973 edition of "The Washington Post", and circulation in the forum, of an allegedly defamatory newsstory. The *Erie* bound district court found the Company

susceptible to jurisdiction under Florida's long arm statute and we affirm.[2]

The pertinent Florida statute providing for the assertion of in personam jurisdiction over non-resident defendants, F.S.A. § 48.193 (1973) provides in part as follows:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:

(a) Operates, conducts, engages in, or carries on a business or business venture in this state or has an office or agency within this state.

(b) Commits a tortious act within this state.

(f) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided that at the time of the injury either:

1.  .  .  .

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use, and the use of consumption resulted in the injury.

The district court found that the Florida statute authorized the assertion of jurisdiction over the Company under both subsections (1)(b), the "tortious act" portion, and (1)(f)2, the "products liability" segment of the long arm provision. The district court ruled, however, that jurisdiction was not properly assertable under section (1)(a)—the "business venture"

---

* Of the Third Circuit, sitting by designation.

1. The district court, stating that its order denying the Company's motion to dismiss involved controlling questions of law as to which there is substantial ground for difference of opinion, certified an immediate appeal. We granted leave to appeal pursuant to 28 U.S.C. § 1292(b).

2. Our holding is based upon the conclusion that the district court had jurisdiction under § 48.193(1)(b), "the tortious act" section of the Florida long arm statute.

provision. The Company contends that the Florida long arm statute does not provide for assertion of jurisdiction in the circumstances of this case and that even if it could be so construed, first amendment considerations prevent the constitutional exercise of state jurisdictional power. The appellee disputes the district court's holding that F.S.A. § 48.-193(1)(a) does not serve to bring the Company within the court's jurisdiction. For reasons to be developed later in this opinion we confine ourselves to a construction of the "tortious act" section of the Florida long arm statute in holding that the district court has jurisdiction to hear this case.[3]

Drawing liberally from the order of the district court denying the Company's motion to dismiss, we note the following factual matters which are relevant to the disposition of this litigation.

(1) The Company is a foreign corporation not qualified or authorized to transact business in Florida. It has neither offices, telephone listings, real property, not other assets in Florida. In addition there are no Company agents or employees residing in the forum.

(2) "The Washington Post" is an operating division of the Company. The "Post" is circulated in Florida by direct mailing to unsolicited individual subscribers and to independent wholesalers and newsstands. Subscription renewals are solicited by "The Washington Post."

(3) The average circulation of the "Post" in the forum during the 6 month period ending on September 30, 1973 was: (a) 622 copies daily, constituting 0.117% of the newspaper's total daily circulation, and (b) 684 copies Sunday, constituting 0.097% of the "Post's" total Sunday circulation.

(4) During 1973 the Company derived $42,000 from Florida-related advertising published in "The Washington Post." This revenue comprised 0.4% of the newspaper's total 1973 advertising lineage.

(5) "The Washington Post" gathers Florida news through one independent contractor (stringer) who resides in the forum, and by dispatching reporters to Florida on special assignments. In the 12 month period preceding December 11, 1973, reporters from the "Post" spent 288 days in Florida and produced 143 articles which were published in the newspaper. Many of the articles dealt with former President Nixon's Florida activities or with Florida's professional sports teams.

(6) The Company is a joint venturer in the Los Angeles Times-Washington Post News Service (News Service). The News Service, 50% of which is owned by the Company, distributes to subscribers newsstories written by employees of the "Post" and "The Los Angeles Times." It is not a separate entity. The News Service's material is distributed to 10 Florida based newspapers. In the 12 month period preceding December 11, 1973 the News Service derived $88,536.30 in revenue from Florida. The allegedly libelous newsstory giving rise to this suit was distributed on the wire of the News Service and published by Florida subscribers to the News Service. None of the Florida newspapers were explicitly named in the appellee's complaint.

(7) Newsweek, Inc., a foreign corporation, is a wholly owned subsidiary of the company which circulates "Newsweek" magazine in Florida.

(8) Post-Newsweek Stations, Florida, Inc., is a wholly owned subsidiary of Post-Newsweek Stations, Inc., a foreign corporation, which is in turn a wholly owned subsidiary of the Company. Post-Newsweek Stations, Florida, Inc., operates two television stations in Florida.

---

**3.** Because the sections of the Florida long arm statute under which jurisdiction is asserted in this suit have never been construed by state courts, the appellant urges this court to certify the jurisdictional issue to the Florida Supreme Court pursuant to F.S.A. § 25.031 (1967). In deference to the Florida court, we pretermit construction of F.S.A. § 48.193(1)(a) and (f). The need for certification is obviated with respect to § 48.193(1)(b) by the lucidity of the statute and by Florida case law which clearly indicates the proper scope of the section.

■ Resolution of the issue whether a state may properly assert in personam jurisdiction over a non-resident defendant involves a dual inquiry. See, e. g., Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1232 (5th Cir. 1973). The first question is whether the state has by statute provided for the assertion of jurisdiction in the context of the situation under scrutiny. Assuming the initial inquiry is answered affirmatively, the question then arises whether the assertion of jurisdiction is constitutionally permissible.

Accordingly, our first task is to ascertain the scope of the Florida long arm statute not yet construed by the state's highest court.[4] Florida Statutes, § 48.-193(1)(a) F.S.A. (1973) provides that a person submits to the jurisdiction of the Florida courts for any cause of action arising from the operation of a business or a business venture in the forum. The district court holding that section 48.-193(1)(a) does not significantly differ from its predecessor, section 48.181 F.S.A.,[5] imposed upon the newer statute judicial incrustations which had evolved upon section 48.181.[6] While the similar wording of the statutes lends support to the district court's position, such a narrow reading of section 48.193(1)(a) arguably impinges upon an attempt by the Florida legislature to broaden the state's jurisdictional authority. We are disinclined, however, unnecessarily to construe a section of the Florida statute so susceptible to differing views and we reserve comment on section 48.193(1)(a) until the Florida courts have spoken or until different circumstances more clearly signal the proper result.

■ Florida Statutes §§ 48.193(1)(b) and (f) require, respectively, that the non-resident defendant commit a tortious act within the forum, or cause injury to a resident of the state by an act or omission outside the forum—that is, for example, by the introduction of a defective product into the stream of commerce which subsequently causes injury in Florida. The Company contends the alleged libel in this case occurred in Washington, D.C. and that the "tortious act" section of the long arm statute con-

---

4. See Estate of Goldstein v. C.I.R., 479 F.2d 813, 816 (10th Cir. 1973).

5. Fla.Stat. § 48.181(1) (1969) reads in part:

   The acceptancy by any person or persons . . . of the privilege . . . to operate, conduct, engage in, or carry on a business or business venture in this state, or to have an office or agency in the state, [constitutes appointment of the Secretary of State] on whom all process in any action . . . arising out of any transaction or operation connected with or incidental to the business or business venture may be served.

6. In disallowing the assertion of jurisdiction pursuant to § 48.193(1)(a) the district court stated: "Plaintiff has not shown that defendant exercised any control over those wholesalers and newsstands regarding their manner of distribution and sale of "The Washington Post". Such control is necessary in order to satisfy § 48.193(1)(a)."

   Prior to the enactment of § 48.193(1)(b), the tortious act section of the present Florida long arm statute, the assertion of in personam jurisdiction over a non-resident tortfeasor or manufacturer of a defective product was possible only if the commercial setting of the injury enabled the Florida courts to say that the non-resident was engaged in a business or in a business venture. See In Personam Jurisdiction—Due Process and Florida's Short "Long-Arm", 23 Fla.L.Rev. 336 (1971). In accommodating the long arm statute to situations which did not clearly come within its scope the Florida courts imposed certain conditions upon its use. For example:

   [T]he party attempting to perfect such service must demonstrate either (1) that the foreign corporation has some degree of control over the personal property referred to . . . in the hands of the "brokers, jobbers, wholesalers or distributors" selling or distributing the personal property in this State or (2) that the foreign corporation has some degree of control over the "brokers, jobbers, wholesalers or distributors" selling or distributing the personal property in this State. *Id.* at 352.

   Section 48.193(1)(a) remains couched in the "business" or "business venture" language of its predecessor. Whether this language is to be confined by earlier decisions attempting to accommodate a narrower long arm statute to an increasingly mobile society or read in light of the Florida legislature's attempt to expand the authorization for the assertion of jurisdiction, is a question we leave to the Florida courts.

templates only a situation in which an act in Florida causes injury in Florida. The district court, on the other hand, construed the statute broadly to include not only that set of events but also the situation in which a foreign tortious act causes injury within the forum. See generally, Buckley v. New York Post Corporation, 373 F.2d 175, 178–9 (2d Cir. 1967). Since we agree with the district court that the Florida courts would construe section 48.193(1)(b) to allow the assertion of jurisdiction over the Company for an alleged libel published in "The Washington Post" and circulated in Florida, it is unnecessary for jurisdictional purposes to discuss the Company's contention that the libel occurred in Washington, D.C. Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228, 1232 n.5 (5th Cir. 1973). Stated differently, the libel if proved, would for purposes of the Florida long arm statute constitute the commission of a tortious act in the forum. The injury to the appellee's reputation "caused by sending a libel into the state where he lives could still be considered as arising from 'tortious conduct' in that state. . . ." Buckley v. New York Post Corporation, 373 F.2d 175, 179 (2d Cir. 1967).

Such a construction is by no means unprecedented. The Illinois long arm statute,[7] the first designed to exploit the limits of jurisdictional due process articulated in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), is construed in precisely this manner. Process Church of Final Judgment v. Sanders, 338 F.Supp. 1396 (N.D.Ill.1972); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). The fact that the tortious act section of the Florida statute is almost identical to its Illinois counterpart is some indication that the Florida legislature intended to follow Illinois' lead in enacting the most comprehensive kind of long arm statute.[8] In addition, examination of Florida decisions reveals that the state courts have embraced the proposition that the Florida long arm statute is "applicable to the fullest extent permissible within constitutional limits upon the state's power to act extraterritorially." See, e. g., Martin Blumenthal Associates, Inc. v. Dinsmore, 289 So.2d 481, 483 (Fla. App.1974).[9] There is absolutely no reason to think that the present Florida long arm statute was intended to do other than further facilitate the state's power to act extraterritorily.[10] More

7. See Ill.Rev.Stat., ch. 110, § 17(1)(b):
   (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts.
   (b) The commission of a tortious act within the State.

8. The court in Margoles v. Johns, 157 U.S.App. D.C. 209, 483 F.2d 1212, 1216 (1973) describes the three types of long arm statutes most widely relied upon in order to provide for the assertion of jurisdiction on the basis of tortious conduct. They are, in the words of the Margoles court:
   (1) Statutes which predicate jurisdiction over a non-resident upon either a "tortious act" or "tortious conduct" occurring within the state. . . . (2) Statutes which predicate jurisdiction over a non-resident upon

the commission of "a tort in whole or in part" within the jurisdiction. . . . (3) Statutes which substantially adopt the Uniform Act and separate "act" from "injury," granting jurisdiction over non-residents who by their out-of-state acts or omissions cause tortious injury within the state only where additional minimum contacts with the state are also present. (citations omitted)

While these types of statutes have been interpreted in a variety of ways the present tendency is to construe them broadly. The Illinois long arm statute is the archetype for statutes like the Florida long arm statute, which fall into the first category.

9. See also, Flying Saucers, Inc. v. Moody, 421 F.2d 884, 887 (5th Cir. 1970); Delray Beach Aviation Corp. v. Mooney Aircraft, Inc., 332 F.2d 135, 137 (5th Cir. 1970).

10. See Delray Beach Aviation Corp. v. Mooney Aircraft, Inc., 332 F.2d 135, 138 (5th Cir. 1970); Donnelly v. Kellogg Co., 293 F.Supp. 53, 54 (S.D.Fla.1968).

specifically, the Florida courts have cited approvingly the Illinois long arm statute and cases which have construed it liberally. Babson Brothers Co. v. Allison, 298 So.2d 450, 453–54 (Fla.App.1974). In short, the readily documentable Florida affinity for the Illinois statute and the cases which construe it, leads us to the conclusion that the Florida courts would similarly broadly interpret the new Florida long arm statute.

■ The Company explains the expansive scope of the Illinois long arm statute by noting the absence in that statute of a section comparable to Florida's products liability section 48.193(1)(f). The availability of section 48.193(1)(f) in Florida, argues the Company, evidences a legislative intent that the companion tortious act section be narrowly construed to encompass only injuries caused by an act in the forum. We feel that such an understanding of the statute impinges upon the legislative purpose in enacting section 48.193 of expanding Florida's jurisdictional reach. By adopting the Company's interpretation of the Florida statute, the state would be left with limited means of asserting jurisdiction over non-residents in causes of action for defamation. Such a result does not comport with the absence in section 48.193 of the statement found in the previous jurisdictional statute, "This section shall not apply to a cause of action for defamation of character arising from the act." [11] See, Mack Trucks, Inc. v. Arrow Aluminum Castings Co., 510 F.2d 1029, 1031 (5th Cir. 1975). Given the absence of this qualification in the new Florida long arm statute, and assuming arguendo that section 48.193(1)(f) applies only when defective products (as opposed to libelous newsstories) cause injury in the forum,[12] we conclude that section 48.-

193(1)(b) must be read broadly in order to ensure Florida the flexibility necessary to apply the statute "to the fullest extent permissible within constitutional limits." Martin Blumenthal Associates, Inc. v. Dinsmore, *supra*.

In summary we feel that the following factors lead to the conclusion that the district court correctly construed section 48.193(1)(b), the tortious act section of the Florida long arm statute: (1) the state's desire to broaden its jurisdictional reach which is manifested by the enactment of § 48.193; (2) the Florida courts' predilection for construing the prior long arm statute in a manner designed to realize the constitutional limits of jurisdictional power; (3) the similarity between the Illinois statute and the Florida law; (4) the Florida court's favorable citation of the Illinois statute and case law; (5) the omission in § 48.193(f) of the statement in § 48.182, "This section shall not apply to a cause of action for defamation of character arising from the act."; (6) the absence of any statutory basis for the assertion of jurisdiction over non-residents in a non-commercial setting in a cause of action for defamation, unless § 48.193(1)(b) is broadly construed.

Having decided that the Florida statute authorizes the assertion of jurisdiction in the circumstances of this case, we turn to the second aspect of our inquiry; is the assertion of in personam jurisdiction over the Company constitutionally permissible? Stated in terms of the jurisdictional test articulated in International Shoe Company v. State of Washington, the question is whether the Company has "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " [13]

---

11. Fla.Stat. § 48.182 (1969).

12. In Buckley v. New York Post Corporation, 373 F.2d 175, 178 (2d Cir. 1967), an action in which a Connecticut resident sued the New York Post Corporation for libel, the court found the assertion of jurisdiction on the basis of the products liability provision of the Connecticut long arm improper. Utilization of the products liability section of the Florida long

arm as a jurisdictional base in the instant libel suit also requires a rather tortured reading of the statute. Again, however, we defer to the Florida courts for the initial construction of § 48.193(1)(f).

13. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 102 (1945).

The focus in *International Shoe* is upon the nature and quality of the contacts between the non-resident and the forum: "The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less."[14] In fact, the Court in *International Shoe* recognized the possibility that the commission of a single act might in certain circumstances justify the assertion of jurisdiction by a state over a non-resident defendant.[15] State and federal decisions subsequent to *International Shoe* have authorized the assertion of jurisdiction on the basis of a single tort not only in situations involving the employment in the forum of dangerous instrumentalities,[16] but also in the context of commonplace torts.[17] In Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1, 3, 15 L.Ed.2d 39, 43 (1965) Justice Goldberg said

> The logic of this Court's decisions in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, supports the validity of state "long arm" statutes such as the one involved here which base in personam jurisdiction upon commission of a "tortious act" in the forum state. Since those decisions a large number of states have enacted statutes similar to the one here. In cases under these statutes in state and federal courts, jurisdiction on the basis

of a single tort has been uniformly upheld. (citations omitted).[18]

■ The Company concedes that but for the nature of the tort involved in this suit there would be little question regarding the constitutionality of the exercise of Florida's jurisdictional power. It argues, however, relying strongly on New York Times Company v. Connor, 365 F.2d 567 (5th Cir. 1966), and Buckley v. New York Times Company, 338 F.2d 470 (5th Cir. 1964), that in the context of a libel suit against an out-of-state newspaper, first amendment considerations require more contacts between the non-resident and the forum in order to sustain the assertion of jurisdiction. Otherwise, as this court said in New York Times Co. v. Connor, the danger persists that the burdens of litigation might " 'limit the circulation of information to which the public is entitled' " and might " 'freeze out of existence' the distribution on a limited basis of publications espousing unpopular positions in a particular locale."[19] We note, however, that *Buckley* and *Connor* have never precluded the possibility of obtaining in personam jurisdiction over non-resident publishers in actions for defamation. In Curtis Publishing Co. v. Golino, 383 F.2d 586 (5th Cir. 1967), a decision upholding the assertion of jurisdiction in a suit against a national magazine, this court said:

> Certainly the language in *Connor* does not stand for the proposition that, be-

---

**14.** 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95, 103 (1945).

**15.** *Id.*

**16.** E. g., Newman v. Fleming, 331 F.Supp. 973 (S.D.Ga.1971). See also Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927) and Elkhart v. Dornier Werke, 343 F.2d 861 (5th Cir. 1965).

**17.** E. g., Smyth v. Twin State Improvement Corporation, 116 Vt. 569, 80 A.2d 664 (1951). *Smyth* was cited approvingly by the Supreme Court in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), a case in which the Court upheld the assertion of in personam jurisdiction over a

non-resident defendant on the basis of a single contract which had substantial connection with the forum.

**18.** There are of course limitations on the power of a state to exercise its jurisdictional power over non-residents. "[T]here must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958).

**19.** 365 F.2d 567, 573 (5th Cir. 1966).

cause of the constitutional protection of the dissemination of ideas, a publisher may never be sued for libel in a state other than that of publication. Rather, *Connor* indicates that first amendment considerations are a factor relevant to a determination of the jurisdictional question; and the discussion of that factor in *Connor* must be viewed in its factual context. (citations omitted) *Id.* 592.

The *Golino* decision indicates that first amendment considerations do not preclude the assertion of jurisdiction over a national magazine, when the purposeful nature of such a publication's activities in the forum, and the concomitantly greater pecuniary benefits accruing to the magazine by virtue of its distribution, tend to ameliorate the fear that the prospect of litigation might limit the circulation of information to which the public is entitled. Giving the "cautionary note" of *Connor* its due, Edwards v. Associated Press, 512 F.2d 258 (5th Cir. 1975), we find the tests of *International Shoe* and *Golino* amply satisfied, and hold the Washington Post Company constitutionally susceptible to the jurisdiction of Florida. As previously mentioned, the Company, in addition to circulating relatively few issues of "The Washington Post" in Florida, also derived $42,000 from Florida-related advertising published in the "Post." Reporters from the "Post", including the author of the allegedly defamatory newsstory

giving rise to this suit, spent substantial amounts of time in the forum. Their activities could hardly be characterized as casual or sporadic. The News Service, staffed by "Post" employees and housed in "Post" facilities distributed material to 10 Florida based newspapers, and derived $88,536.30 in revenue from Florida. The allegedly libelous newsstory was published in "The Washington Post", an operating division of the Company, and circulated in the forum. The newsstory was distributed on the wire of the News Service to Florida subscribers and published by them.[20] In contrast the *Buckley* and *Connor* cases involved the mere circulation of newspapers through the mail to subscribers with only the occasional visits of reporters on special assignment. The activity within the forum in those cases was far more restricted than the activities herein involved. In a comment pertinent to the instant litigation the court in *Golino* said:

> The legal principle urged upon us by appellants would allow a publisher, fully aware of the strong possibility of resulting legal action, to print libelous matters directed at persons in distant localities, yet remain free from suit in such localities in spite of the pecuniary benefits gained in that very jurisdiction where it asserts it cannot be held legally accountable.[21] *Id.* 383 F.2d 591.

Such a principle contravenes the basic teaching of *International Shoe* that the

---

**20.** The Company contends that the activities of the News Service should not be counted among its contacts in Florida because the cause of action did not arise from a publication of the News Service. We disagree. The Florida long arm statute requires that the cause of action arise from the commission of a tortious act within the state. The terms of the Florida statute are literally complied with in this case because the libel suit arises from the circulation of an allegedly defamatory "Washington Post" newsstory in the forum. With regard to the constitutionality of the state's assertion of jurisdiction, nothing in *International Shoe* prevents this court from considering the Company's plethora of activities in Florida in determining the fairness of a suit which is grounded on the commission of a single tort.

**21.** In an October 4, 1973 letter to the author of the allegedly defamatory newsstory and to the editor of "The Washington Post" the appellee stated:

> The purpose of this letter is to put you on notice prior to your writing any article of the true and correct facts of the matter. I have been instructed by Mr. Rebozo and the Bank to inform you that if in light of these facts you and your employer, The Washington Post, should publish any article containing false and/or derogatory material that constitutes a libel and/or slander of The Key Biscayne Bank or Mr. Rebozo, which act would be in reckless disregard of the truth as it has been demonstrated to you, legal action will be instituted against both you and The Washington Post.

maintenance of a suit should depend upon notions of fair play and substantial justice. Here, the Company, while on notice of the possibility of resulting legal action, circulated an allegedly defamatory newsstory in a state in which it engaged in substantial news gathering and news distributing activities—activities from which the Company derived considerable pecuniary benefit. As observed by the Company, both parties to the litigation are "quite solvent." Florida is clearly the most convenient forum in terms of the economical utilization of judicial resources. We feel that the assertion of jurisdiction over the Washington Post Company is fair in the circumstances and under the undisputed facts of this case.

Affirmed.