David BROWN, etc., et al., Plaintiffs,

v.

Henry F. SEEBACH III, et al., Defendants.

No. 90–10085–Civ.

United States District Court, S.D. Florida.

April 12, 1991.

---

Martin Raskin, Miami, Fla., for plaintiffs Nancy, Peter and David Brown.

John Wylie, Miami, Fla., for defendants Seebach.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' 12(b)(2), 12(b)(6), and 12(f) MOTIONS

JAMES LAWRENCE KING, Chief Judge.

This cause is before the court upon motions by defendants Henry F. Seebach III, Eyelematic Manufacturing Company, Inc., Henry F. Seebach, Jr., and Laurie Seebach to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). In the alternative, defendants Eyelematic Manufacturing Company, Inc., Henry F. Seebach, Jr., and Laurie Seebach further request the court to strike certain portions of the complaint pursuant to F.R. Civ.P. 12(f).

### FACTS

On the night of December 22, 1989, the defendant Henry Seebach III, the decedent Eric Brown, and Leigh Otzen attended a party at Ocean Reef Club in Key Largo, Florida. During the evening, defendant Seebach III decided to drive to the Circle K store located in Key Largo. The sixteen-year-old defendant convinced Eric and Leigh, ages fourteen years, to accompany him. The convenience store was located approximately nine miles from the Club. Defendant Seebach drove a BMW automobile which was owned by his father's company, defendant Eyelematic Corporation. Upon arrival at the Circle K, Seebach III bought three cases of beer, opened and drank the contents of one can, and proceeded to drive back to Ocean Reef. Eric Brown was in the front seat while Leigh sat in the back seat. Somewhere along the way, the defendant accelerated to speeds in excess of 100 miles per hour, lost control, and crashed into a tree. Otzen escaped through the left rear window of the car and began running along county road 905 looking for help. Seebach escaped through the driver's side. Eric Brown, unable to escape, died in the crash and resulting fire.

Plaintiff David Brown is the uncle of the decedent Eric Brown. David Brown is the administrator ad prosequendum for the estate and survivors of Eric Brown. Eric's mother and father, Peter and Nancy

Brown, are also named individually as plaintiffs. The complaint alleges a variety of causes of action against the various defendants named in the complaint. Specifically, the plaintiffs allege a cause of action for the wrongful death of Eric Brown, brought pursuant to Fla.Stat. § 768.16.

The plaintiffs maintain that subject matter jurisdiction is founded in diversity as all the plaintiffs are citizens of New Jersey and all the defendants being citizens of a different state. The amount in controversy exceeds $50,000, and the cause of action arose in Florida within the district of this court. Certain defendants reside here as well.

The defendants move the court to dismiss the complaint, dismiss certain counts of the complaint or, in the alternative, to strike various claims pursuant to F.R. Civ.P. 12(b) and 12(f). Rule 12(b) F.R. Civ.P., provides for seven grounds on which to predicate a motion to dismiss prior to filing an answer. Defendants have pled two of the seven grounds. The grounds include: (1) lack of jurisdiction over the person (Rule 12(b)(2)); and (2) failure to state a claim (Rule 12(b)(6)).

As a general rule, the court will pass on the jurisdictional issues before considering whether a claim was stated by the complaint or the alternative motions.

I. Rule 12(b)(2) Motion of Henry Seebach III

As is the case in all diversity actions, the court must look to state law for a basis on which it may assert personal jurisdiction over defendants. *See Gordon v. John Deere Company*, 466 F.2d 1200 (5th Cir. 1972); *Bloom v. A.H. Pond Co., Inc.*, 519 F.Supp. 1162 (S.D.Fla.1981). In a diversity action, a federal court "may exercise personal jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum state." *Oriental Imports & Exports v. Maduro & Cariel's Bank*, 701 F.2d 889, 890 (11th Cir.1983). Once the defendant is found to fall within the provisions of the long-arm statute, the court must determine whether subjecting the defendant to the jurisdiction of the court is constitutionally permissible. *Rebozo v. Washington Post Co.*, 515 F.2d 1208, 1211 (5th Cir.1975). The reach of the state's long-arm statute is not unbounded, but rather is limited by the due process clause of the fourteenth amendment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 470 n. 12, 105 S.Ct. 2174, 2181 n. 12, 85 L.Ed.2d 528 (1985). Thus, the court proceeds to a two-part inquiry to determine whether jurisdiction is proper under the long-arm statute.

A. *Long–Arm Statute*

 The plaintiff invokes the jurisdiction of the court on the basis that the defendant, while present in the forum, allegedly committed various torts actionable under the law of the state. Florida's long-arm statute provides in relevant part:

(1) Any person, whether or not a citizen or resident of the state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

\* \* \* \* \* \*

(b) Committing a tortious act within this state.

Fla.Stat.Ann. § 48.193(1)(b) (West Supp. 1989).

Under the Florida long-arm statute, the person invoking the jurisdiction of the Florida courts carries the burden of proving facts showing jurisdiction to be proper. *Oriental Imports & Exports*, 701 F.2d at 891. The plaintiff here alleges that the defendant committed several torts within the state, making personal jurisdiction proper under subsection 48.193(1)(b). As pleaded by the plaintiff, defendant Seebach III's allegedly tortious conduct was his wrongful, wanton and reckless acts that caused the BMW car to swerve, spin, and crash into a tree along the side of County Road 905 in Key Largo, Florida, resulting in the death of Eric Brown.

In *International Harvester Co. v. Mann*, 460 So.2d 580, 582 (Fla. 1st D.C.A. 1984), the court stated that "a plaintiff seeking to assert long-arm jurisdiction over a non-resident must allege in his complaint sufficient facts to fall within the language of § 48.193 Fla.Stat." The court can find no support for the defendant's contention that the failure to identify the particular long-arm statute by number renders the complaint "fatally defective." Nor can the court find merit in defendant's argument that the jurisdictional allegations are "conclusionary."

The court holds that the plaintiff has clearly established a basis to invoke long-arm jurisdiction in this action. The allegations in the complaint indicate the various torts allegedly committed by Seebach III. Moreover, the alleged tortious conduct as set forth in the complaint fulfill the necessary elements required to fall within the language of § 48.161 Fla.Stat. The plaintiff has met the burden by pleading sufficient facts to justify an application of the long-arm statute. *Chase Manhattan Bank, N.A. v. Banco del Atlantico*, 343 So.2d 936 (Fla. 3d D.C.A.1977).

### B. *Due Process Analysis*

■ To determine whether assertion of that jurisdiction is constitutionally permissible, the court must consider whether asserting jurisdiction offends the due process clause of the fourteenth amendment. The issue is whether the nonresident defendant has sufficient minimum contacts with the state so as not to offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The nature and quality of the contacts are to be considered in applying the minimum contacts test. *Rebozo*, 515 F.2d at 1214. Even the commission of a single tortious act may be held to provide a basis for personal jurisdiction. *Id.* Nevertheless, the court must still determine "whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court here." *World Wide Volkswagen v. Woodson*, 444 U.S. 286, 295,

100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). An assertion of specific jurisdiction over an out-of-state defendant, as is sought here under § 48.193(1)(b), requires that the defendant have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977). (Stevens, J. concurring in judgment.) This requirement is met if the defendant " 'purposefully directed' his activities at residents of the forum," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that "arise out of or relate to' those activities." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182.

■ Applying these principles to the matter at hand, the court concludes that the jurisdictional test is satisfied. The Supreme Court of this state has held that "by committing a tort in Florida a nonresident establishes sufficient minimum contacts with Florida to justify the acquisition of in-personam jurisdiction over him by personally serving him outside the state." *Godfrey v. Neumann*, 373 So.2d 920 (Fla. 1979). Furthermore, taking the facts alleged by the plaintiff in his response to the defendant's motion to dismiss as true, the court can conclusively find that the alleged injury arose out of or was related to the activities of the defendant motorist. The connection between a nonresident motorist and his activities while driving on the streets and highways of this state is not too remote to give the defendant fair warning that he may be susceptible to being haled into court in Florida as a result of his conduct. Consequently, the defendant can be subject to the jurisdiction of Florida.

The court concludes that subjecting the defendant to personal jurisdiction in this state is constitutionally permissible under the due process clause. As a result, the defendant is prone to the jurisdiction of the court under the tortious conduct section of Florida's long-arm statute. *April Indus-*

*tries, Inc. v. Levy,* 411 So.2d 303, 304 (Fla. 3d D.C.A.1982).

II. Various Motions of Defendants Eyelematic Manufacturing Company, Inc., Henry F. Seebach, Jr., and Laurie Seebach.

 (a) Rule 12(b)(2) Motion of Henry F. Seebach, Jr., and Laurie Seebach.

■ As before, the court will rule on the jurisdictional issue before considering whether the claim was stated by the complaint. In testing jurisdiction under § 48.193 Fla.Stat., the plaintiff must initially allege in the complaint sufficient jurisdictional facts to show compliance with the statute. The burden then shifts to the defendant to make a prima facie showing of the inapplicability of the statute. Thereafter, the plaintiff is required to substantiate the jurisdictional allegations. *Newton v. Bryan,* 433 So.2d 577 (Fla. 5th DCA 1983).

The defendants argue that plaintiffs' complaint does not put forth sufficient facts to allege that the Seebachs were actually in Florida when the accident happened, that they committed a tort here, or that they have minimum contacts with the forum. Therefore, the defendants argue that the exercise of personal jurisdiction will offend traditional notions of fair play and due process.

In light of this meritorious challenge, the plaintiff must then prove jurisdiction over the person by affidavits, testimony, or documents. *See Investors Associates, Inc. v. Moss,* 441 So.2d 1144 (Fla. 3rd DCA 1983). The court has reviewed the affidavit filed by Cathy Fleming in response to defendants' challenge. There appears to be sufficient facts in the complaint and supporting affidavits to substantiate the jurisdictional allegations. The affidavit states that Trooper Cecilia Bennett awakened Mr. and Mrs. Seebach on the morning of December 23, 1989, to inform them of the accident. This fact in and of itself would be sufficient to allege that the Seebachs were in this state at the time of the accident. Cathy Fleming would have first-hand knowledge of the events in question if she spoke

directly with the state trooper. In addition, the complaint declares that the Seebachs gave their son permission to drive the BMW car at night on Florida roads. Moreover, the complaint demonstrates that the Seebachs (1) failed to control, (2) negligently supervised, and (3) failed to exercise due care under the circumstances. Both the complaint and the affidavit illustrates that the Seebachs were at the Ocean Reef Club in Key Largo, Florida, during the time of the accident. The facts further place the Seebachs aboard their yacht at Ocean Reef on the night of the accident. In order to invoke a statutory right, the pleader must either allege *ultimate facts* to activate the statute or show how the statute applies. *Life Laboratories, Inc. v. Valdes,* 387 So.2d 1009 (1980). In the case *sub judice,* the court holds that the plaintiff has alleged sufficient facts in the complaint and supporting affidavit to activate the statute.

At this juncture, the court would point out to the parties that Florida courts have held that the commission of a tort for purposes of establishing long-arm jurisdiction does not require physical entry into the state, but merely requires that the place of injury be within Florida. *See Lee B. Stern & Company, Ltd. v. Green,* 398 So.2d 918, 919 (Fla. 3d D.C.A. 1981).

The court has previously discussed the due process argument. *Godfrey,* 373 So.2d at 920. Once minimum contacts are established with the forum state, the defendants "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 462, 105 S.Ct. at 2177. Defendants contend that they will be unreasonably disadvantaged by having to defend this action in Florida. The court concludes, however, that Florida's interest in adjudicating the dispute and the public's interest in furthering fundamental social policies outweigh the burden to defendants. Accordingly, defendants' motion to dismiss the complaint on jurisdictional grounds must be denied.

 (b) Rule 12(b)(6) Motion—Improperly Named Plaintiffs.

■ The defendants argue that David Brown, as the court-appointed personal rep-

resentative of the estate, is the only proper representative of Peter and Nancy Brown (as survivors) and the estate pursuant to Fla.Stat. § 768.20, which provides in pertinent part:

> The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death. When a personal injury to the decedent results in his death, no action for the personal injury shall survive, and any such action pending at the time of his death shall abate....

The statute explicitly establishes that the personal representative is the proper person to bring a wrongful death action on behalf of the deceased and his survivors. *Benson v. Benson,* 533 So.2d 889 (Fla. 3rd DCA 1988). Plaintiffs have no objection to proceeding with David Brown as the court-appointed representative of Eric Brown's estate. The court will allow the complaint to stand as to David Brown. The court reasons that it would be improper to dismiss the action because the parents are named as plaintiffs in addition to the named representatives. The court therefore, upon agreement of the parties, dismisses all claims of David and Nancy Brown as party plaintiffs.

### (c) Rule 12(b)(6) Motion to Dismiss Counts IV, V, VI, and X.

### STANDARD

On a motion to dismiss, the court must view the complaint in the light most favorable to the plaintiff, *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969), and may only grant the motion where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In addition, "at this stage of the litigation [the court] must accept [plaintiffs'] allegations as true." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### COUNT IV

#### (Imputed Parental Liability)

Count IV of plaintiffs' complaint asserts a claim for imputed negligence pursuant to Fla.Stat. § 322.09 or, in the alternative, the applicability of CGSA 14–36(d)(1). Fla.Stat. § 322.09(1)(a) and (2) provide:

> [t]he application of any person under the age of 18 years for an instructor's permit or driver's license shall be signed and verified before a person authorized to administer oaths by the father, mother, or guardian or, in the event there is no parent or guardian, by another responsible adult who is willing to assume the obligation imposed under this chapter upon a person signing the application of a minor.

> * * * * * *

> Any negligence or willful misconduct of a minor under the age of 18 years when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of such minor for a permit or license, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or willful misconduct.

Plaintiffs advance the theory that there is nothing on the face of the statute, in the legislative history, or supporting case which would limit its applicability to minors who apply for a Florida driver's license. In actuality, the plaintiffs request the court to adopt a new public policy in support of the view that liability should extend to minors who drive within the State of Florida no matter where their driving privileges have originated.

In *Hartford Acc. & Indem. Co. v. Ocha,* 472 So.2d 1338, 1342 (Fla. 4th DCA 1985), the court held that Fla.Stat. § 322.09 will be strictly construed. Therefore, the court must look to the wording of the statute for guidance. The court construes Fla.Stat. § 322.09 to apply only to persons who sign applications for driver's licenses or permits in Florida. Any negligence or willful misconduct of a resident under the age of eighteen while driving a motor vehicle upon a highway will be imputed to the individual

who has signed the application for a Florida driver's license. *Greer v. Workman,* 203 So.2d 665 (Fla. 4th DCA 1967).

■ The Connecticut statute, recited by the plaintiff, only requires a parent to sign the application for a permit or driver's license. CGSA § 14–36(d)(1) does not have a provision imputing liability to the person signing the form. The court is satisfied that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief on the theory of imputed liability under the Connecticut statute. For these reasons, the defendants' motion to dismiss count IV of the plaintiffs' complaint is granted. Under the circumstances, the legislature is best equipped to resolve the competing considerations implicated by such a cause of action.

## COUNT V

### (Exceptions to Parental Liability)

Plaintiff advances several theories in opposition to defendants' 12(b)(6) motion: One, negligent supervision; and two, negligent entrustment. Count V of plaintiffs' complaint involves the issue of parental responsibility for injuries inflicted by a minor child upon third parties. The specific alleged tortious act is that the parents negligently failed to exercise due care in allowing Seebach III to drive under the circumstances.

The court is aware of the "basic and established law that a parent is not liable for the torts of a minor child because of the mere fact of paternity." *Gissen v. Goodwill,* 80 So.2d 701 (Fla.1955).

The court is also aware of four *broadly* defined exceptions wherein a parent may incur liability. *Gissen,* supra. The exceptions at issue here are: (1) "where the parent entrusts the child with an instru-

mentality which, because of the child's lack of age, judgment or experience, may become a source of danger to others"; and (2) "where the parent fails to exercise control over the minor child although the parent knows or with due care should know that injury to another is possible." [1]

The position of the defendants is that the plaintiffs have failed to allege any ultimate facts that would form the basis for a claim under the negligent entrustment exception to the rule. Defendants also argue that there is no allegation in the complaint that Seebach had a habit of engaging in the sort of conduct which triggers the negligent supervision exception to the rule.

■ The court has reviewed the standard announced in *Gissen,* supra, and agrees that the four exceptions in *Gissen* control here. It is important to point out that *Gissen* dealt only with the second exception mentioned above. *Gissen* requires the plaintiff to plead that the child had a habit of engaging in a particular act or course of conduct which led to the plaintiffs' injury. Count IV of plaintiffs' complaint, paragraph 64, states:

> In addition, Mr. and Mrs. Seebach knew or should have known that Seebach had the *habit* and propensity when driving to exceed the speed limit, and otherwise drive in an impulsive and unsafe manner.

It appears that plaintiffs have alleged all that is necessary under this exception wherein a parent may incur liability. Count V of plaintiffs' complaint states a cause of action for negligent supervision.

■ As to the first exception, plaintiffs allege that the Seebachs' liability emanates from the doctrine of negligent entrustment. The court looks to the Restatement (Second) of Torts § 390 (1966) for guidance.[2] Section 390 "applies to anyone who

---

**1.** *Gissen* dealt with exception number (2) above. The *Gissen* court read the exception narrowly, holding that the cause of action must allege that the child had a habit of engaging in a particular act or course of conduct which led to the plaintiff's injury. *Gissen v. Goodwill,* 80 So.2d 701 (1955).

**2.** The Restatement (Second) of Torts § 390 states that one who supplies directly or through

a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

supplies a chattel for the use of another. It applies to sellers, lessors, donors, or lenders, and to all kinds of bailors."

In *Vic Potamkin Chevrolet, Inc. v. Horne*, 505 So.2d 560 (Fla. 3rd DCA 1987), the court approved the idea that a person who loans a chattel to a person he knows is not responsible should be held liable. Florida courts have not addressed the precise issue on parental liability for negligent entrustment of an automobile to their son. At this point, the court has to determine whether "negligent entrustment," with its essential elements, has been properly pleaded in Count V of the complaint. The cause of action must allege that the Seebachs entrusted their son with an instrumentality which, because of his lack of age, judgment, or experience, may become a source of danger to others. *Gissen v. Goodwill*, 80 So.2d at 703 (1955). The plaintiffs' complaint, paragraphs 61–63, contain the necessary allegations to defeat a motion to dismiss.[3]

In keeping with the spirit of Fed.R.Civ.P. 8, it does not appear beyond a reasonable doubt that the plaintiffs can prove no set of facts in support of their claims for negligent supervision and/or negligent entrustment which would entitle them to relief. Therefore, defendants' motion to dismiss count V must fail.

## COUNT VI

### (Doctrine of Beneficial Ownership)

■ The defendants seek to dismiss count VI of the complaint on the ground that it "attempts to create a new theory of liability in Florida." Plaintiffs rely on the doctrine of beneficial ownership to impute liability to Mr. and Mrs. Seebach. Specifically, the plaintiffs question the beneficial ownership of the automobile at the time of the accident. Under the doctrine of beneficial ownership, the general rule is that bare legal title to an automobile does not determine its ownership in considering the question of tort liability. In a leading case, the court held that the party having a beneficial interest with control and authority over the use of the vehicle is the party who is liable for a tort committed by its use. *Cox Motor Co. v. Faber*, 113 So.2d 771 (1959).

Under Florida law, the owner of an automobile is responsible for the manner in which it is used on the highways and the owner's liability extends to its use by anyone else with his knowledge or consent, express or implied. *Southern Cotton Oil Company v. Anderson*, 80 Fla. 441, 86 So. 629 (1920); *Engleman v. Traeger*, 102 Fla. 756, 136 So. 527 (1931).

Under certain circumstances, Florida courts have applied the beneficial ownership doctrine to impute liability to parties with a beneficial interest in the automobile. In *Frankel v. Fleming*, 69 So.2d 887, 888 (Fla.1954), a bailee of a motor vehicle was held liable for damages resulting from its negligent operation by a third party to whom the bailee had given permission to drive that vehicle. The court stated:

Having held a lessee liable in the cited case, *Wilson v. Burke*, 53 So.2d 319 (Fla. 1951), we find no difficulty in now holding the appellant, a bailee, responsible in the instant case for injury caused by the one to whom he entrusted the car, especially where, to all intents and purposes, that person was the bailee's spouse.

The doctrine of beneficial ownership is further discussed in *Martin v. Lloyd Motor Company*, 119 So.2d 413 (Fla. 1st DCA 1960). In *Martin*, the court held that "regardless of whether bailment is gratuitous, for hire, or for mutual benefit of both parties, a bailee having possession of, and dominion and control over, a motor vehicle may be held liable for negligent operation of such vehicle by one to whom the bailee gives permission to operate on the public roads and highways of this state, even if there was no gross negligence or bad faith on the part of the bailee."

---

**3.** Paragraphs 61 and 62 allege in pertinent part:

The BMW car, when operated on the highways of the State of Florida, was a dangerous instrumentality.

Mr. and Mrs. Seebach entrusted Seebach, their 16–year–old son, with the BMW car, a dangerous instrumentality, which because of Seebach's lack of age, judgment, and experience, became a source of danger to others.

Plaintiffs' complaint properly alleges that the BMW automobile and its driver were sufficiently under the dominion and control of Mr. and Mrs. Seebach as to make the Seebachs responsible for the negligence of the driver. Guided by the above cited decisions, the court is convinced that the alleged liability of the Seebachs for the negligent operation of a motor vehicle in their possession and under their dominion and control, even though by a person to whom possession had been entrusted by them is not dependent upon ownership or legal relationship. *Martin*, supra. Based on the foregoing analysis, the court can only find that count VI of the plaintiffs' complaint states a cause of action for beneficial ownership. The defendants' motion to dismiss count VI is denied.

## COUNT X

■ Count X of plaintiffs' complaint alleges a cause of action for hedonic damages. Hedonic damages attempt to compensate the survivors of the decedent for lost pleasures.

Fla.Stat. § 768.21 controls what damages may be awarded in a wrongful death action. Hedonic damages are not made a part of Fla.Stat. § 768.21. Furthermore, the court is unaware of any Florida case law where hedonic damages were awarded. At this juncture, the court is inclined to grant the defendants' motion to dismiss count X. The court bases its decision on the fact that "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts which would entitle him to relief" in Florida. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The court is of the opinion that there is no cause of action for hedonic damages in Florida. The court must follow the guidelines established by Fla.Stat. § 768.21 and Florida case law until such time as the Supreme Court or the Florida legislature decides differently.

(d) Rule 12(f) Motion.

■ Finally, the court considers defendants Henry and Laurie Seebach and Eyelematic Manufacturing Company, Inc.'s motion to strike certain portions of plaintiffs' complaint as being immaterial, improper, and not permitted by Florida law. A motion to strike under Rule 12(f) is the appropriate remedy for the elimination of redundant, immaterial, impertinent, or slanderous matters in any pleading. *U.S. v. Marisol, Inc.*, 725 F.Supp. 833 (1989). Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted. *U.S. v. Marisol*, supra. A motion to strike can be treated as a motion to dismiss for failure to state a claim upon which relief could be granted. *Commercial Union Ins. Co. v. Upjohn Co.*, 409 F.Supp. 453 (1976).

■ Defendants correctly contend that the claim for loss of future earnings of the minor and net accumulations to the estate of the minor are not recoverable under Florida law absent specific authorization by Fla.Stat. § 768.21. According to § 768.21(6)(a)(1), only the decedent's surviving spouse or lineal descendants may recover these damages. *Bassett v. Merlin, Inc.*, 335 So.2d 273 (Fla.1976). On the other hand, each survivor may recover the value of future lost support and services from the date of the decedent's death reduced to present value. Fla.Stat. § 768.21(1). Generally, the cost of maintaining a minor child to maturity would exceed the value of any support and services which might likely be rendered by the child to the parent. *Williams v. United States*, 681 F.Supp. 763 (N.D.Fla.1988). The claim for lost support and services fails to allege that the decedent had any extraordinary income producing attributes. Accordingly, the parents' claim for lost support and services must be stricken as improper under the Florida Wrongful Death act.

■ Defendants' motion to strike attorneys' fees is covered by Fla.Stat. § 768.26. Attorneys' fees and costs are deducted from the awards to the survivors and the estate. No Florida statute provides for the recovery of attorney's fees in this situation.

Accordingly, plaintiffs' claim for attorney's fees is stricken.

■ Prejudgment interest has previously been decided by this court in *Leenen v. Ruttgers Ocean Beach Lodge, Ltd.*, 662 F.Supp. 240 (S.D.Fla.1987). The court found that prejudgment interest is unavailable in tort actions. The court reasoned that the amount and measure of damages is discretionary in tort actions. Accordingly, the court strikes the plaintiffs' claim for prejudgment interest.

The funeral expenses were paid by the survivors of the decedent. As this court has dismissed all claims of David and Nancy Brown as the survivors of the decedent, the court strikes the claim for funeral expenses. The right to recover funeral expenses is vested in the personal representative. Section 768.21(5) and (6)(b), Fla.Stat.

Therefore, after careful consideration of this matter and the spirit of the rules 12(b)(2), 12(b)(6), and 12(f), the Florida Statutes and Florida case law, it is

ORDERED and ADJUDGED as follows:

1. Defendant Seebach III's motion to dismiss for lack of in personam jurisdiction be, and the same is hereby, DENIED.

2. Defendants Eyelematic Manufacturing Company, Inc., Henry F. Seebach, Jr., and Laurie Seebach's motion to dismiss for lack of in personam jurisdiction be, and the same is hereby, DENIED.

3. Defendants Eyelematic Company, Inc., Henry F. Seebach, Jr., and Laurie Seebach's motion to dismiss the complaint for improperly named plaintiffs is, and the same is hereby, DENIED.

4. Defendants Eyelematic Manufacturing Company, Inc., Henry F. Seebach, and Laurie Seebach's motion to dismiss count IV of plaintiffs' complaint be, and the same is hereby, GRANTED.

5. Defendants' Eyelematic Manufacturing Company, Inc., Henry F. Seebach, and Laurie Seebach's motion to dismiss count V of plaintiffs' complaint be, and the same is hereby, DENIED.

6. Defendant Eyelematic Company, Inc., Henry F. Seebach, and Laurie See-bach's motion to dismiss count VI of plaintiffs' complaint be, and the same is hereby, DENIED.

7. Defendants Eyelematic Company, Inc., Henry F. Seebach, and Laurie Seebach's motion to dismiss count X of plaintiff's complaint be, and the same is hereby, GRANTED.

8. Defendants' Eyelematic Manufacturing Company, Inc., Henry F. Seebach, and Laurie Seebach's motion to dismiss plaintiffs' claims for lost, past, and future support and services, loss of future earnings of the minor, and net accumulations to the estate of the minor be, and the same is hereby, GRANTED.

9. Defendants' motion to strike attorneys' fees and prejudgment interest and funeral expenses be, and the same is hereby, GRANTED.

10. Defendants' motions to strike the affidavit of Cathy Fleming be, and the same is hereby, DENIED.

11. Defendants' request for oral argument in this matter be, and the same is hereby, DENIED.

DONE AND ORDERED.